## NAVASSA GUANO COMPANY v. RICHARDSON.

1. It is well settled that since the act of 1791 (5 *Stat.*, 169) a mortgage is not a conveyance of any estate, except where the mortgagor shall be out of possession, but is simply a lien to secure the payment of a debt.

2. The act of 1797 (5 *Stat.*, 311), which gives to releases of the equity of redemption by a mortgagor the same force and effect as if the act of 1791 had not been passed, was not intended to repeal the act of 1791, nor to restore a mortgage in such case to its common law operation of conveying the legal title, but simply gave to such a release the effect of a conveyance. The same result follows from section 2299 of the General Statutes.

3. Hence, where a mortgagee takes a release of the equity of redemption, his legal title is acquired at the time of such release, and does not relate back to the date of the mortgage.

4. A release of the equity of redemption has all the essentials of a deed of conveyance, and the act of 1797 makes it effectual as such.

5. Since 1791 the equity of redemption means, in this State, the legal title remaining in the mortgagor, which may be levied and sold under execution, or transferred by deed of conveyance.

6. Whether a release of the equity of redemption, properly construed, discloses an intention to keep the mortgage open for the protection of the mortgagee, is a matter for the court; and whether such intention otherwise existed, was a question of fact to be submitted to the jury. This case distinguished from *Agnew* v. *Railroad Company*, 24 *S. C.*, 18.

7. After the execution and delivery of a mortgage, judgment was obtained against the mortgagor, after which the mortgagee took from the mortgagor a conveyance of the equity of redemption. The judgment creditor then levied, sold, and purchased the land. *Held*, that the mortgage was satisfied, and the conveyance to the mortgagee was subject to the then existing judgment lien; and therefore the purchaser at sheriff's sale was entitled to recover the land from this mortgagee.

Before WALLACE, J., Clarendon, October, 1886.

It is admitted in the Brief that the presiding judge charged the jury as stated in the exceptions. These exceptions were as follows:

1. Defendant excepts to the charge made by the presiding judge to the jury on the trial in said action, for that he respectfully submits that his honor, the presiding judge, charged, and erred in charging, the jury that the acceptance by the defendant of the release by the mortgagor, D. M. Richardson, of the latter's equity of redemption of the mortgaged premises, operated as a conveyance to the defendant of the said premises as of the date of such release, and that thereby and thereupon the defendant's prior mortgage debt was satisfied, and his rights as mort-

gagee merged in his legal estate as grantee and were extinguished, and that he acquired the said legal estate subject to the lien of plaintiff's judgment, which has been entered subsequent to the execution of the mortgage, but prior to the execution of the release of the equity of redemption; that the sheriff's sale of the said premises under the execution issued to enforce said judgment and his conveyance of said premises to the plaintiff by the deed, proved in this case, vested the legal estate, and said premises, in the plaintiff by title paramount to that of the defendant and wholly discharged of and from all the rights, equities, and lien which the defendant, as previous or prior mortgagee, had, or was entitled to, up to the time of the acceptance by him of the said release of the equity of redemption. And that the plaintiff was therefore entitled to recover the land in this action.

2. He excepts to the instruction given by his honor, the presiding judge, to the jury to find a verdict for the plaintiff for the possession of the said premises, and respectfully submits that he erred in such instruction.

*Messrs. Haynsworth & Cooper*, for appellant.

*Messrs. Moises & Lee* and *J. T. Barron*, contra.

April 19, 1887. The opinion of the court was delivered by

MR. JUSTICE MCIVER. This was an action to recover possession of certain real estate in the possession of the defendant. Both parties claim under D. M. Richardson—the plaintiff under a sheriff's title through a judgment against said D. M. Richardson, entered February 23, 1883, under which the two tracts of land in controversy were levied on and sold by the sheriff some time in the year 1886, and duly conveyed to the plaintiff; and the defendant through two mortgages, one executed February 17, 1880, covering both of said tracts of land, and the other executed January 2, 1883, covering only the smaller tract, together with certain personal property therein mentioned, together with a release of the equity of redemption, as it is called, from the said D. M. Richardson to the defendant, executed on August 3, 1885.

This release, after describing specifically these mortgages as given by said D. M. Richardson to the defendant to secure the payment of the two bonds therein mentioned, proceeds as follows: "And whereas the said Samuel C. C. Richardson now holds the said two bonds and mortgages unpaid and unsatisfied. Now, in consideration of the said Samuel C. C. Richardson marking paid and satisfied my two bonds aforesaid, and in further consideration of the sum of three dollars to me paid by the said Samuel C. C. Richardson, the receipt whereof is hereby acknowledged, I, the said Davison M. Richardson, do hereby for ever release and relinquish unto the said Samuel C. C. Richardson, his heirs and assigns, all my right, title, and interest, and all my equity of redemption in and to the said two mortgaged tracts of land or premises hereinbefore mentioned and described."

It is conceded that, in accordance with the terms of this paper, the said bonds were marked satisfied, and were delivered to said Davison M. Richardson, and the defendant in his answer alleges "that the said mortgages, as unsatisfied and still of force, were retained by the defendant as muniments of his title to said lands;" but this allegation was not admitted by plaintiff, and no evidence tending to prove it was adduced, except the circumstance that the mortgages were offered in evidence by the defendant. From this statement it will be seen that while the judgment under which plaintiff claims is junior in date to both of the mortgages, it is senior to the paper styled the release of the equity of redemption.

Upon this state of facts, the Circuit Judge charged the jury that the plaintiff had the better title, and was, therefore, entitled to recover. Defendant appeals upon grounds which will sufficiently appear in the further discussion of the case. It is quite manifest that the controlling inquiry in the case is whether the title set up by the defendant can, by the conjoint operation of the mortgages and the release of the equity of redemption, relate back to the date of the mortgages, or whether it must be confined to the date of the release; for if it can relate back to the date of the mortgages, then it is prior and superior to that of the plaintiff; otherwise, it is junior and inferior.

It certainly is as well settled as anything can be, both by stat-

ute. and adjudications of the courts, that since the act of 1791 (5 *Stat.*, 169) a mortgage is not a conveyance of any estate except "where the mortgagor shall be out of possession,"[1] but is simply a lien to secure the payment of a debt. *Simons* v. *Bryce*, 10 *S. C.*, 354 ; *Warren* v. *Raymond*, 12 *Id.*, 9. This is conceded by appellant, but he contends that, by virtue of the provisions of the act of 1797 (5 *Stat.*, 311), a mortgage, followed by a release of the equity of redemption, is restored to its original character at common law, and must be regarded as a conveyance of the legal estate to the mortgagee, which is perfected by a release of the equity of redemption, and in such a case the title of the mortgagee takes date from the mortgage, and not from the release.

This view rests apon the assumption that where a mortgage is followed by a release the common law applies just as if the act of 1791 had never been passed. This is only another mode of saying that the act of 1797 operates as a repeal of the act of 1791 in such a case. Now, as it is quite certain that there is no repealing clause in the act of 1797, and as repeals by implication are not favored, the burden is on the appellant to show clearly such an implication. The rule is that "a statute can be repealed only by an express provision of a subsequent law, or by necessary implication. To repeal a statute by implication there must be such a positive repugnancy between the provisions of the new law and the old that they cannot stand. together or be consistently reconciled." *Pott. Dwar. Stat.*, 154, note 4, and cases there cited.

Hence, in order to sustain appellant's position, it is necessary that it should be made to appear that there is such a positive repugnancy. between the provisions of the act of 1791 and the act of 1797, as that they cannot stand together or be reconciled. If, therefore, any view of the provisions of the latter statute can be suggested by which the two acts may be reconciled, then the implication of repeal does not arise. That such a view can be, and has been, taken, may be seen by reference to the separate opinion of Judge Wardlaw in the case of *Mitchell* v. *Bogan* (11 *Rich.*, at page 704), where he goes into an elaborate discussion

---

[1] And even then only as of the date when the mortgagor goes out of possession. *Warren* v. *Raymond*, 12 *S. C.*, 24.—REPORTER.

of these two acts, and the view there suggested by that distinguished jurist has been adopted in the case of *Simons* v. *Bryce*, 10 *S. C.*, at pages 372–3. According to that view the effect of the act of 1797 was simply to give to a release of the equity of redemption the effect of a conveyance.

This view, if it needs any additional support, is strengthened by a careful consideration of the terms of the two acts of 1791 and 1797. It is clear beyond all dispute that one of the primary objects of the act of 1791, as appears from its express terms, was to deprive a mortgage of real estate of its common law feature as a conveyance of an estate, and to convert it into what it was really intended for, a mere security ; and it would not be readily inferred, in the absence of any express language to that effect, that the legislature, within the short period of six years, had determined to abandon a policy so explicitly declared and restore mortgages to the character which they bore at common law. Accordingly we find no intimation of such a purpose in the act of 1797, and, on the contrary, the purpose, as disclosed, was simply to remove certain doubts which had arisen as to the effect of a release of the equity of redemption executed after the passage of the act of 1791—the doubt being whether such a paper would invest the mortgagee fully with seizin of the premises, inasmuch as no estate at all had been conveyed to him by the mortgage under the operation of the act of 1791 ; and hence the whole purpose of the act of 1797 was to remove such doubt by declaring, in effect, that, as Judge Wardlaw says, the release should operate as a conveyance of the land to him who holds the incumbrance thereon.

The act of 1797 begins with the preamble, that whereas, under the act of 1791, "doubts have arisen whether a mortgagee, taking a release of the equity of redemption from his mortgagor, can be considered as legally and fully seized of the premises mortgaged, inasmuch as that act declares that the premises mortgaged are still to be deemed the estate of the mortgagor, and only a pledge in the hands of the mortgagee, who is not thereby vested with any legal estate, and therefore cannot be benefited by such a release. Be it therefore enacted, that all releases of the equity of redemption made since the passing of the said act, or hereaf-

ter to be made, shall have the same force and effect in law as if the said act had not been passed."

Now, it is. to be observed that there is not a. word in this act intimating a purpose to change the features of a mortgage which had been imparted to it by the act of 1791; but, on the contrary, those features are recognized in express terms in the preamble as raising the doubt as. to what would be the effect of a release of the equity of redemption, and the sole purpose was to declare what should be the effect of *such release*, notwithstanding such change in the character and effect of the mortgage, expressly recognized in the act, and *not* what should be the operation and effect of *the mortgage*. This purpose was to give the release the operation and effect of a conveyance—that inasmuch as the release prior to the act of 1791, by the aid of the mortgage, which then transferred the legal estate, operated as a full transfer of the estate, both legal and equitable, it should, after the passage of the act of 1791, whereby it had lost the aid of the mortgage, still "have the same force and effect in law, as if the said act had not been passed." That is, that the release could now effect, without the aid of the mortgage, the same purpose which it could have done prior to the passage of the act of 1791, depriving it of such aid.

It is urged, however, that to give to a release of the equity of redemption the character of a conveyance would be in violation of all the rules and principles of conveyancing, and a departure from the form laid down in the act of 1795, now incorporated in the General Statutes as section 1775. It will be observed that this statute does not prescribe the form as there laid down as one that *must* be used in order to make a valid conveyance. Even if it did, the legislature might subsequently prescribe some other form, or declare that some other mode of conveyance should be. sufficient. It seems to be settled that no particular form of words need be used, if the intention to convey can be ascertained, and the paper in question has certain other requisites, as, for example, a seal, two witnesses, and a sufficient description of the property intended to be affected. See *Lorick & Lowrance* v. *McCreery*, 20 *S. C.*, 428, and the cases there cited. The release in this case is under seal, it was executed in the presence of two wit-

nesses, it contains a full description of the lands, and purports to
release and relinquish unto the defendant, his heirs and assigns,
all the right, title, and interest, as well as all equity of redemp-
tion of the mortgagor, and we do not see why such a paper can-
not operate as a conveyance, especially when, as we construe the
acts of 1791 and 1797, the legislature has so declared.

It will be observed that, in the consideration of the first ques-
tion presented by this appeal, we have confined our attention to
the language of the acts of 1791 and 1797 as they were origi-
nally adopted; but in 1872, when the general statutes were
adopted, these two acts were expressly repealed, and in lieu
thereof very different language was used, as follows: "That no
mortgagees shall be entitled to maintain any possessory action
for the real estate mortgaged, even after the time allotted for the
payment of the money secured by mortgage is elapsed; but the
mortgagor shall be still deemed owner of the land, and the mort-
gagee as owner of the money lent or due, and shall be entitled
to recover satisfaction for the same out of the land in the manner
herein set forth: Provided, that, notwithstanding the foregoing
provision, all releases of the equity of redemption shall be bind-
ing and effectual in law; and said provisions shall not apply
when the mortgagor shall be out of possession." This was the
law which was of force at the time the first of the two mortgages
in this case was executed, except that by the act of 1879 (17
*Stat.*, 19), the provision that the act should not apply "when the
mortgagor shall be out of possession," was stricken out. In the
General Statutes of 1882, section 2299, which was the law in
force at the time of the execution of the second mortgage, as well
as at the time of the sheriff's sale, and at the time of the execu-
tion of the release, the provision is re-enacted in substantially
the same language, omitting the provision which had been
stricken out by the act of 1879, *supra.*

Now, looking at this language alone, it is difficult to conceive
of any ground upon which the proposition contended for by the
appellant can be rested. The language used in the general stat-
utes, so far as it relates to the question under consideration, sim-
ply amounts to this—that notwithstanding a mortgage is not a
conveyance of any estate at all, yet still a release of the equity

of redemption shall be binding and effectual in law. Now, precisely what this language would mean, unless it is read in the light of the different signification which the terms used have acquired by the change in the essential features of a mortgage effected by the act of 1791, it would be difficult to say; but it certainly does *not* mean what is contended for by the appellant, viz., that when a mortgagor releases the equity of redemption to his mortgagee, the mortgage is thereby taken out of the operation of the first part of the section and restored to its character as a conveyance under the common law.

There is not a word in the section which even looks that way. The words, "notwithstanding the foregoing provision," are relied on as showing that the effect of the proviso on the preceding part of the section was to be the same as the appellant argued, that the effect of the act of 1797 was on the preceding act of 1791, viz., that when such a release was executed it was to be regarded as if the preceding part of the section had not been passed; for otherwise he contends the word "notwithstanding" would be useless and unmeaning. It is sufficient to say that the legislature did not say in 1872 that a release of the equity of redemption should have the same force and effect as if the first part of the section had not been passed, as they did say in 1797 in reference to ·releases executed after the adoption of the act of 1791, and the very fact that they did not say so, is quite sufficient to forbid us from imputing to them an intention to so declare the law. The language used in the section of the general statutes, stripped of intervening words, substantially amounts to this : "Notwithstanding the mortgagor shall be still deemed owner of the land, his release of the equity of redemption shall be binding and effectual in law."

· To interpret this language, we must necessarily read the words, not in the sense which they bore at some previous time, but in the sense which they have acquired by universal usage, for it must be assumed that the legislature used them in that sense. Now, it must be conceded that the words "equity of redemption" have acquired a totally different meaning from that which they originally bore, and that, in this State at least, ever since the act of 1791, now nearly a hundred years, they are universally used

to express exactly the opposite idea to that which they were originally designed to convey. Originally they signified, as the words naturally import, a mere *equitable* right, which the mortgagor had to redeem the land which he had conveyed to his mortgagee; while now those words signify the *legal* estate remaining in the mortgagor, subject to the incumbrance of the mortgage. As long as a mortgage was regarded as a conveyance, the true theory was that while the mortgage vested the *legal* estate in the mortgagee, yet it was impressed with a trust to reconvey to the mortgagor upon payment or tender of the mortgage debt, and this trust being a mere *equitable* right in the mortgagor to go into the Court of Equity and demand a reconveyance upon performance of the condition of the mortgage, was then very appropriately styled the *equity* of redemption.

But when a mortgage was deprived of its character and effect as a conveyance, and the mortgagor was still to be deemed the owner of the land—the holder of the legal estate—and the mortgage was a mere lien to secure the payment of a debt, the words, equity of redemption, became wholly inappropriate to express the nature of the right remaining in the mortgagor—as Nott, J., says in *State* v. *Laval*, 4 *McCord*, at page 340, "clearly a misnomer"—although constantly so used, both in acts of the legislature and in judicial decisions, and these words have now come to mean nothing but the *legal* estate remaining in the mortgagor, subject to the incumbrance of the mortgage, which can be levied on and sold under an execution, which could not have been done as long as this right remaining in the mortgagor was a mere equity. This, therefore, only affords one of the many instances in which words, in the course of time and by common usage, have acquired a totally different meaning from that which they naturally import or originally bore. Hence, whenever these words are found, either in an act of the legislature or in a judicial decision, since the act of 1791, they must be regarded as signifying the *legal* estate remaining in the mortgagor, and not a mere *equitable* right to redeem, and that a release of the equity of redemption means nothing more than a release of the *legal* estate—a conveyance or surrender of such estate which had not previously passed out of the mortgagor.

From this it follows that the defendant never acquired any title whatever, either legal or equitable, to the lands in dispute until the execution of the release of the equity of redemption, as it is called; and this being subsequent to the judgment under which the plaintiff claims, there was no error on the part of the Circuit Judge in instructing the jury upon this purely legal question that the plaintiff's title was prior and superior to that of the defendant.

Again, it is contended on the part of the appellant, that, under the recent decision in the case of *Agnew* v. *The Charlotte, Columbia & Augusta Railroad Company*, 24 *S. C.*, 18, the defendant was entitled to recover. In the first place, there does not seem to have been any such request to charge as would bring this case under the principle decided in that case. The judge was not requested to instruct the jury that if they believed it was the intention of the parties, at the time the release was executed, that the mortgages should remain open for the protection of the defendant against any intervening incumbrance, the defendant would be entitled to recover. Nor was he requested to charge that the terms of the release, properly construed, showed such intention. We do not feel sure, therefore, that this question is properly before us.

But waiving this, and assuming that the question is properly before us, it seems to us that this is a very different case from that of *Agnew* v. *C. C. & A. R. R. Co.*, for in that case there was an *express agreement* inserted in the deed that the mortgage should remain open for the protection of the defendant against intervening incumbrances, and this might be regarded as evidence that the payment of the mortgage debt was not absolute, but conditional; that if the lien of the mortgage was preserved, then the conveyance was accepted in satisfaction of the mortgage debt, but if the lien was not preserved, then the conveyance should not operate as satisfaction. Here, however, the release contains no such express agreement, and there was no testimony adduced tending to show that the parties intended *at the time* to leave the mortgage open for the protection of the defendant against intervening incumbrances. The defendant relies solely upon the inference to be drawn from the terms of the release,

and from the fact that the defendant offered the mortgages in evidence at the trial, from which it is to be inferred that he retained possession of the mortgages. Now, if the intention to leave the mortgages open was to be drawn from a construction of the terms of the release, then as it is for the court to construe a written paper, the judge should have been asked to put such a construction upon the paper in his charge to the jury; but if it was to be drawn from the circumstance that the defendant produced the mortgages in evidence at the trial, then the judge should have been requested to submit the question of fact to the jury as to what was the intention of the parties. But neither of these things appears to have been done, and hence we see no foundation for the charge of error on the part of the Circuit Judge.

It is true that a very eminent author lays down the doctrine contended for by the appellant in very broad terms (1 *Jones Mort.*, §§ 848, 870, 871), but the very language which he uses shows that his views are based upon the idea that a mortgage is a conveyance of the *legal* estate, leaving only an *equitable* right to redeem in the mortgagor; and it will be observed that the cases which he cites as authority for the doctrines laid down in the text are taken mainly from those States where mortgages are regarded as conveyances, as at common law. For example, in section 848 he says (italics being ours): "It is a general rule that when the *legal title* becomes united with *the equitable title,* so that the owner has the whole title, the mortgage is merged by the unity of possession. But if the owner has an interest in keeping *those titles* distinct, or if there be an intervening right between *the mortgage* and *the equity,* there is no merger." Again, in section 870, after speaking of the different modes in which the mortgagee may acquire the equity of redemption, he says: "But the result of his acquiring the equity of redemption in either way is generally to merge his *mortgage title* in it, unless there be some reason why he should keep *the titles* separate."

It is manifest from the language thus quoted that the author is speaking of the law applicable where a mortgage is, as at common law, a conveyance of the legal estate, and should not be applied where the mortgage has been deprived of this common law feature. This is conclusively shown by the same author's

language in section 873: "When a mortgagor releases to his mortgagee, instead of regarding the result to be a merger at law of *one estate* in the other, it may more properly, perhaps, *under the common law doctrine of mortgages*, be deemed to be merely an extinguishment of the right of redemption. This was the view taken by Mr. Justice Story in a case before him in the United States Circuit Court (*Dexter* v. *Harris*, 2 *Mason*, 531): 'As to the merger,' he said, 'it is clear that there can be no such operation as the argument supposes. At law, by the mortgage, a conditional estate in fee simple passed to the mortgagee; and the only operation of the conveyance of Aldrich would be to extinguish the equity of redemption, and thus to remove the condition. If that conveyance was good, it had the effect, not to enlarge the estate, but to extinguish a right. It was not the drowning of a lesser in a greater estate, for the estate was already a fee simple; but it was an extinguishment of the condition or equity.' " The author then proceeds to say (the italics still being ours), "*Of course, this doctrine would not be held where a mortgage is regarded not as an estate in fee but merely as a lien, the fee and general ownership remaining in the mortgagor;* but the lesser interest would merge in the greater."

While, therefore, the doctrines contended for by the appellant, as laid down in the sections first cited from *Jones on Mortgages*, may well be applied in those States where a mortgage is still regarded as a conveyance of the legal estate, they are totally inapplicable where, as in this State, a mortgage has no such effect, but is regarded, not as transferring any estate whatever, but simply as a lien. The same remarks will apply to what is said upon this subject by another distinguished author—*Pomeroy* in his *Equity Jurisprudence*. A mortgage in this State, not operating as a conveyance of any estate whatever, but simply as a lien, it follows necessarily that the very life of a mortgage depends upon the continued existence of the debt which it is given to secure, and hence the moment the debt is paid the mortgage, as well as the lien which it conferred, is gone forever. Now, as under the well settled rule, anything may operate as payment which is accepted as such, it follows that when the mortgagee accepts a conveyance of the mortgaged premises from the

mortgagor *as payment* of the mortgage debt, from that moment the mortgage is extinguished and is no longer a lien upon what was before the mortgaged premises. The fact that the thing which a creditor accepts as payment proves afterwards to be valueless in his hands, cannot affect the question. The rights of the parties are fixed at the moment when the payment is made and accepted, and cannot be affected by any subsequent occurrence.

The case of *Agnew* v *C.. C. & A. R. R. Co.*, *supra*, constitutes no exception to this rule, for there, as we have said, the acceptance of the conveyance in payment of the mortgage debt was conditional, as appeared from the express agreement inserted in the conveyance, and hence, without the observance of the condition, there was really no payment. But here there was no such express agreement, and, on the contrary, the release was in terms stated to be made, and was accepted, "in consideration of the said Samuel C. C. Richardson marking paid and satisfied my two bonds aforesaid," which were accordingly so marked and delivered up to the mortgagor. There is not a word in the release indicating an intention that the lien of the mortgage was to be preserved, and no evidence tending to show any such intention. Indeed, all the probabilities are that the parties never thought of such a thing, but rested upon the idea first contended for by the appellant, that upon the execution of the release the provisions of the act of 1791 did not apply, and hence that the defendant having been invested with the legal estate by the execution of the mortgages, subject to the equitable right of the mortgagor to redeem, as at common law, all that was necessary to perfect the legal title in the defendant, was to extinguish such equitable right of the mortgagor by the execution of the release, and therefore that defendant's legal title took date from the date of the mortgages, and the only purpose of the release was to relieve such legal title from the equity of the mortgagor to which it was subject. But, as we have seen in a previous part of this opinion, this view cannot be sustained even under the provisions of the acts of 1791 and 1797, and certainly not under the provisions inserted in the general statutes of 1872, when those acts were expressly repealed.

If such a view could be sustained, then the result necessarily would be that the plaintiff could have no lien even upon what is called the equity of redemption of the mortgagor; for if the *legal estate* passed to the mortgagee under the mortgages, which were prior in date to the judgment under which plaintiff claims, it is quite certain that it could have no lien on *such estate*, and it is equally certain that it could have no lien on the *mere equity* remaining in the mortgagor. Consequently the land in the hands of the defendant would be entirely free from any claim of the plaintiff, who could not even redeem on payment of the mortgage debt, never having obtained the equity of redemption. Such a doctrine would enable mortgagors and mortgagees by collusion to perpetrate the grossest frauds upon other creditors, and cannot for a moment be sanctioned.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.