## MASSEY v. WALLACE.

1. No error can be assigned to the failure of the trial judge to charge what was not requested.
2. Under the bastardy act of 1795 (*Gen. Stat.*, § 1785), a man having a wife or children, is forbidden from giving to his paramour or bastard children, one or all, more than one-fourth of his clear estate, whether by will, deed, note, or by any other ways or means whatsoever.
3. In action on a sealed note, the defences were, (1) that the consideration of the note was future cohabitation, and (2) that the note was also void under the bastardy act. The clear estate of the obligor was more than four times the amount of the note. The trial judge charged as to the meaning and effect of the bastardy act, but afterwards withdrew from their consideration all questions under the bastardy act, and con-

fined them to a consideration of the issue raised by the first defence. *Held,* that the jury must have based their verdict for defendant wholly upon the first defence.

4. The trial judge may state the testimony to the jury, withholding the expression of his opinion as to the truth of the facts.

Before HUDSON, J., York, November, 1888.

Action by Louisa C. Massey against J. F. Wallace, executor of B. F. Briggs, deceased, commenced September 21, 1887. The opinion states the case.

*Messrs. W. B. McCaw* and *Hart & Hart,* for appellant.

*Messrs. C. E. Spencer* and *Wilson & Wilson,* contra.

February 26, 1890. The opinion of the court was delivered by MR. JUSTICE McIVER. The plaintiff brought this action upon a note under seal against the defendant as executor of the last will and testament of Benjamin F. Briggs, deceased, of which the following is a copy : "$1,825.00.   One day after date, I promise to pay Louisa C. Massey, eighteen hundred and twenty-five dollars, with interest at twelve and a half per cent. per annum, until paid, it being in full of all claims for damages which she may heretofore claimed against me—for value received.   Oct. 8, 1875.   Witness my hand and seal. (Signed)   B. F. Briggs (seal.)"   Upon this note several credits were endorsed—the first being dated 11th December, 1875, and the last 14th Feb., 1883.

The defendant by his answer, amongst other things, set up two defences, which seem to have been mainly relied upon in the court below, to wit : 1st. That the consideration of the note was illicit cohabitation between plaintiff and defendant's testator, future as well as past, and that this rendered the contract null and void.   2nd. That the note was given as a device to evade the provisions of the act of 1795, now incorporated in the General Statutes as section 1785, forbidding a person having a lawful wife or child from giving more than one-fourth of the clear value of his estate to a woman with whom he lives in adultery or to his bastard child or children.

In the trial below, testimony was adduced for the purpose of sustaining both of these defences, amongst other things to the effect that Briggs, then having a lawful wife and two children, who are still living, made his will on the 3d of December, 1880, several years after the execution of the note sued on, whereby he gave to his illegitimate children, the offspring of his illicit connection with plaintiff, one-fourth part of his net estate, after payment of his debts and funeral expenses, and, after legacies of fifty dollars each to his two legitimate children, he gave all the rest and residue of his estate to his friend, James L. Clark. There was also testimony tending to show that the value of his whole estate was about fifteen thousand dollars.

The Circuit Judge, in his charge to the jury, after stating these defences, and characterizing the first as the main defence, proceeded to read to the jury the statute above referred to, saying that its object was "to protect the lawful wife and children against any injustice that married men might be induced to do them by reason of superior attachment to a woman and her bastard children;" and after stating very fully the testimony bearing upon the first defence, and giving the jury very explicit instructions in regard to the law applicable thereto, he used this language:

"There is another feature about this [case] that it is very difficult for me to explain to you. It is in evidence that Mr. Briggs made a will. In that will, after providing for the payment of his debts, he says: [quoting that clause of the will giving to the children of the plaintiff, naming them, one-fourth of his estate, and characterizing them as his children]. You will observe that these children were all recognized by him as his by this present plaintiff, and he gives them one-fourth of his estate. Well, the law will not allow him to give more than one-fourth to the family; if he gives one-fourth to the children, he cannot to the wife. He can give one-fourth betwixt them, or one fourth to the children and nothing to the wife, or one fourth to the wife and nothing to the children. I am very much troubled to know how to deal with this act. It is very certain, gentlemen of the jury, that if you should conclude from all the evidence in this case, that this was simply an effort on the part of Mr. Briggs to give this lady, this plaintiff, this amount of money out of his estate, instead of

giving it by deed or will; that he resorted to the shape of a pro-
missory note to give her that much of her estate, as one whom he
lived with in adultery, and by whom he had these children, then
your verdict could not exceed one-fourth of the estate.    I am in-
clined, however, gentlemen, to say to you that you had better find
your verdict upon the issue as to what the consideration of the
note is." And after instructing the jury explicitly that if they
found that the note was given entirely for past cohabitation, their
verdict should be for the plaintiff, but if they found that it was for
future as well as for past cohabitation, then they must find for
the defendant, he concluded his charge in these words: "I will
send this case to you with this instruction: that you will find the
entire amount of the note if you find that it was intended to be
entirely for the past, and with no other intercourse after that
time; but if it was for all cohabitation, before and after, you will
throw it all out, and find your verdict for the defendant."

It is admitted "that after the jury had retired to consider as
to their verdict, and whilst they were out of hearing, the presid-
ing judge expressed an intention to recall them and instruct them
upon the effect of the bastardy act; but defendant's counsel stated
that he would waive that point in the defence, and his honor did
not recall the jury." The jury having returned a verdict in
favor of the defendant, the plaintiff made a motion on the min-
utes for a new trial, which was refused, and judgment having
been entered on the verdict, the plaintiff appealed upon the fol-
lowing grounds:

1. "Because his honor erred in reading to the jury the statute
of 1795, commonly known as the bastardy act, in face of the
proof.

2. "Because his honor, in charging the jury that the appellant
and the natural or illegitimate children of Benjamin F. Briggs
could only receive one-fourth of the net estate between them,
erred under the peculiar circumstances of this case—the proof
being conclusive that at the date of the note, October 8, 1875,
$1,825, the face of the note, did not constitute one-fourth of the
net estate of Benjamin F. Briggs, and five years having inter-
vened between the execution of the said note and the making of
the will.

3. "Because his honor erred in instructing the jury that Briggs having already by his will given his illegitimate children one-fourth of his estate, he could not give anything to the appellant herein ; and that if, instead of giving the appellant $1,825 by gift, deed, or will, he gave her a sealed note for the purpose of evading the statute of this State, then such note is null and void.

4. "Because his honor erred in not charging the jury, as was earnestly contended by the plaintiff's counsel, that if $1,825 did not amount to one fourth of the net value of Benjamin F. Briggs's estate on the 8th day of October, 1875, the statute known as the bastardy act could not apply, and that the jury should be governed by the principles of the common law, under which a bond given, even by a married man, to a woman with whom he was living in adultery was valid.

5. "Because * * * his honor, in summing up the testimony adduced in support of the defence, instructed the jury that testimony had been produced proving that Briggs and the appellant had had intercourse with each other as far back as 1869, and that the appellant had children, some of them born before and others subsequent to the execution of the note, which children Briggs acknowledged to be his in his will, begotten of the appellant ; and that in so charging the jury, his honor determined the important facts of the maternity of the children and the period of their birth, and erred in not leaving those facts to be determined by the jury."

Inasmuch as the Circuit Judge did not instruct the jury as complained of in the third ground of appeal, and inasmuch as we find no such request to charge as would furnish any foundation for the fourth ground, it will not be necessary to consider either of those grounds.  Indeed, as it is very manifest that the judge entirely withdrew from the jury all questions growing out of what is called the bastardy act, and instructed them explicitly to find their verdict upon the issue presented by the first defence, we do not think that any of the grounds of appeal except the fifth are pertinent to the questions which we are called upon to determine. The entire charge is set out in the "Case," and we have extracted therefrom all of it which related to the operation and effect of the act of 1795, and we must say that, so far as we can discover,

there was no error of law in what was said in regard to that act. Its terms are very sweeping, and it forbids a person having a wife or lawful children from giving to a woman with whom he lives in adultery, or to his bastard children, more than one-fourth of the clear value of his estate either by deed or will, "or by any other ways or means whatsoever;" and we suppose there can be no doubt that if such a person, with a view to evade the provisions of the act, should give to his paramour a note, such note could only be recovered to the extent of one-fourth of the clear value of his estate; and that was what the jury were, in the first instance, told in this case.

But as the Circuit Judge manifestly had doubts as to the applicability of this act, under the peculiar circumstances of this case, he finally instructed the jury to find their verdict upon the issue as to what was the consideration of the note—whether it was solely for past cohabitation (in which event they were instructed to find for the plaintiff the whole amount due on the note), or whether it was for future as well as for past cohabitation (in which event they were instructed to find for the defendant); and to these instructions no exceptions were taken. We do not see how the jury could have been more clearly and explicitly instructed to find their verdict solely upon the issue as to what was the consideration of the note; and when, in concluding his charge, his honor said to the jury: "I will send this case to you with this instruction," &c., as copied above, we do not see how there could be a doubt in the minds of the jury that they were to pass simply upon the question as to the consideration of the note, and we can have no doubt whatever that their consideration was confined exclusively to that issue.

What appears in the admission copied above, as to what occurred after the jury had retired, confirms this view. For the fact that the judge expressed an intention to recall the jury "*and instruct* them upon the effect of the bastardy act," shows very plainly that the judge, when the matter was fresh in his mind, did not consider that he had given the jury any instruction as to this matter; for he did not propose to give them *further* instructions upon that subject, but simply *to instruct* them, which is altogether inconsistent with the idea that he had already instruct-

ed them upon that point. Then, too, the fact that the motion on the minutes for 'a new trial was refused, shows that the Circuit Judge could then have had no apprehension that the jury had been misled or even confused by what he had said in the course of the charge as to the bastardy act, for otherwise a new trial most certainly would have been granted. From a careful consideration of the whole case, we are entirely satisfied that the only issue left to the jury was as to the consideration of the note, and as that question was left to them under instructions as to the law, to which no exceptions were taken, we see no ground upon which this court can interfere.

The only remaining inquiry is that presented by the fifth ground of appeal, which imputes error to the Circuit Judge in charging upon the facts. We have examined the charge carefully and think it is entirely free from the error imputed. His honor seems to have been particularly careful to do no more than what the constitution expressly permits—state the testimony— and we have been unable to find any language in it which can be properly regarded as an expression or even as an intimation of opinion as to the truth of any of the facts which the jury were called upon to consider.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.