13109

PRINCE v. MATHEWS *ET AL.*

(157 S. E., 836)

April, 1929.

*Messrs. W. H. Nicholson* and *R. F. Davis,* for the executor,

*Messrs. Thurmond & Daniel,* for Henrietta Stockman,

*Messrs. Mays & Featherstone*, for Ellen Prince,

April 2, 1931.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

It is gathered from the statement contained in the transcript that the complaint, which is not set forth, contains two separate and distinct causes of action which should not have been united:

1. The foreclosure of a mortgage given by the defendant, Mathews, to Henrietta Stockman, daughter of H. J. Stockman, now deceased, on January 3, 1925, to secure the payment of a note for $2,500, due five years after date, with interest at 7 per cent. per annum, payable annually, and with a provision accelerating the maturity of the debt upon nonpayment of interest. The defendant, Mathews, admits that no interest has been paid since January 1, 1927. The transcript does not give the date of commencement of the action, which apparently was prior to January 3, 1930, the date of the maturity of the note. The complaint seeks a judgment against Mathews for the amount due upon the note and the foreclosure of the mortgage. The plaintiff claims as assignee of the note and mortgage.

2. An alleged liability of the executors of the will of H. J.

Stockman upon an assignment of the Mathews note and mortgage under the circumstances which will be detailed.

In addition to these, there is a supposed cause of action relied upon by the plaintiff and apparently sustained by his Honor, Judge Dennis, which is not referred to in the brief abstract of the complaint contained in the transcript based upon the alleged liability of H. J. Stockman to compensate the plaintiff for the care of an infant child of a daughter of Stockman.

The executors answered alleging that the assignment of the note and mortgage was procured by fraud, duress, and undue influence; and at the time Stockman was of unsound mind; that it was without any valuable or lawful consideration; that the only consideration for it was the unlawful cohabitation of the plaintiff and the assignor, Stockman. They claim that the note and mortgage belong to the estate of their testator, and ask that the assignment be declared void and that the plaintiff be required to surrender the possession of the note and mortgage to them.

It does not appear whether the defendant, Mathews, answered the complaint or not.

Henrietta Stockman, to whom the Mathews note and mortgage were made payable, was a minor about 14 years of age at the time of the reference in the case, which was held at an unstated time, apparently prior to 1930. After the commencement of the action, upon petition, she was allowed to intervene in the action by guardian *ad litem*, who answered alleging that the title to the note and mortgage was in Henrietta Stockman, and that the pretended transfer of the same was null and void, and asked that plaintiff be required to surrender possession of the note and mortgage and same be turned over to her.

The facts do not present a happy or fragrant state of affairs. About the year 1919, Stockman, a man of some 40 years, married and with a family of several children, formed an affinity with the plaintiff, a married woman, and prac-

tically maintained her, in his unlawful cohabitation, for some eight years, furnishing her a home and the necessities of life, and constantly visiting her.

On January 3, 1925, he negotiated a loan to the defendant, Mathews, of $2,500, and took from him the note secured by mortgage as above described. The papers were made to his daughter, Henrietta. There is some conflict in the evidence as to whether the money advanced on the loan was his own or was from funds in his hands belonging to the daughter. She claims that she had received certain money from relations and turned it over to her father to manage.

The Mathews note and mortgage were retained by Stockman, as was natural; the daughter not being informed of the fact that they were made payable to her.

On January 1, 1926, a year after its execution, Stockman made the following indorsement upon the mortgage: "I hereby transfer note and mortgage to H. J. Stockman, January 1, 1926, Henrietta Stockman, by H. J. Stockman."

On March 1, 1927, he made the following further indorsement upon it: "I hereby transfer note and mortgage to Ellen Prince. March 1, 1927, H. J. Stockman."

The note and mortgage were delivered to the plaintiff, Ellen Prince, and accompanying them was the following letter to the mortgagor, Mathews:

"I am transferring your note and mortgage to Ellen Prince for the amount you owe me on it. I want you to let her have one of the houses, if they will either of them suit her. I was talking to you about it last year for her. I offered you $2,000.00 for the one off the road and $2,300.00 for one of the houses on the road. I am in a pretty bad fix and do not want to leave her without anything as I don't know what will happen. She has been a lady to me for eight (8) years and I want her to have something to help her out if anything should happen. Now, if it don't suit for her to get one of the houses and the balance in money, just pay her what the mort-

gage calls for. If anything happens you will get this and if not I will attend to it myself and oblige.

"This is business between us three."

A further distressing incident connected with the case is presented: An unmarried daughter of Stockman, older than Henrietta, had given birth to a child, a fact that Stockman endeavored to conceal by taking the three weeks old baby to the home of the plaintiff and committing it to her custody. She cared for it for about four months, passing it off as the child of a brother. At the end of that time it was taken back by Stockman and maintained in his home. There is evidence tending to show that he had promised to compensate her for the trouble and care she had had with the baby. There is nothing in the complaint, however, that indicates a purpose to recover in this suit upon that supposed cause of action.

By consent of the parties, the case was referred to the master to take and report the testimony, which was done, and at the April term of Court the issues were argued before the presiding Judge, Hon. E. C. Dennis, who disposed of the issues by his decree. The decree concludes:

1. In reference to the controversy whether the money loaned to Mathews was that of Henrietta or of Stockman, that he made the loan from his own funds.

2. That, though he caused the papers to be made in his daughter's name, and evidently intended to give her the benefit of them, he also intended to retain control of the papers with the right to transfer or satisfy them.

3. That as a matter of law, however, his action constituted him a trustee for her; that he had no legal right to transfer to himself the property of the beneficiary of the trust; that his effort to do so is void; and that the note and mortgage are legally the property of the daughter; that the obligation of Mathews thereon is to her and not to the plaintiff.

4. That the executors of Stockman are liable to the plaintiff for the amount due upon the note, by reason of the assignment and endorsement of the mortgage, if there was a

valuable and legal consideration for the endorsement and transfer.

5. That the transfer was not objectionable upon the ground of fraud, duress, undue influence, or mental incapacity.

6. That the consideration of the transfer of the mortgage "was the service which Ellen Prince performed for H. J. Stockman in the care and nursing, of the child, and that is, of course, a consideration both valuable and legally unobjectionable."

7. Accordingly he rendered judgment in favor of the plaintiff against the executors of Stockman for the amount of the note, $2,500.00, with interest from January 3, 1927, the time up to which Mathews had paid the interest, to the date of the decree (which bears no date in the transcript), amounting to $2,712.17.

8. That the note and mortgage belonged to Henrietta Stockman, and that the plaintiff deliver the same to the Clerk of Court, who was directed to cancel the indorsements thereon and deliver them to Henrietta Stockman.

His Honor held that Stockman, by taking the Mathews note and mortgage in the name of his daughter, intended to give her the benefit of the same; that he thereby became a trustee for her; that he had no legal right to transfer the note and mortgage to himself, as he attempted to do on January 1, 1926; that such attempt was void; and that the note and mortgage are legally the property of the daughter.

The defendants, Henrietta Stockman and the executors of Stockman, have appealed, as also has the plaintiff, who, in addition to certain exceptions, has filed additional grounds for sustaining the judgment in her favor against the executors.

Without treating the exceptions and additional grounds separately, they will all be disposed of by the conclusions hereinafter announced.

While there is some evidence to the effect that the Mathews loan was from funds belonging to Henrietta Stockman, in the keeping of her father, the conclusion of the Circuit Judge that it was from the personal funds of Stockman should be approved.

His conclusions that as matters of law the action of Stockman constituted him a trustee for Henrietta Stockman; that he had no legal right to transfer to himself the property of the beneficiary of the trust; that his effort to do so is void; and that the note and mortgage are legally the property of the daughter; that the obligation of Mathews hereon is to her and not to the plaintiff—should be approved.

The conclusion of his Honor that, through Stockman caused the papers to be made in his daughter's name, and evidently intended to give her the benefit of them, he also intended to retain control of the papers with the right to transfer or satisfy them, is inconsistent with the conclusions stated in the next preceding paragraph hereof, and should not be approved.

The conclusion of his Honor that the executors are liable to the plaintiff for the amount due upon the note, by reason of the assignment of the note and mortgage by Stockman to the plaintiff, provided that there was a valuable and legal consideration for such assignment, should not be approved.

If Stockman had no legal right to assign the note and mortgage which he held as trustee for his daughter, his assignment could necessarily have conveyed no title to the plaintiff. There appears to be no doubt of the correctness of this position; but the contention of the plaintiff is that, when he assigned the note and mortgage which was not his to assign, Stockman guaranteed the validity of his title to the papers and must be held as for a breach of warranty. If one should assign to another a chose in action which he did not own, and received from the assignee something of value therefor, it seems reasonable that, upon the failure of

the assignee to recover upon the assigned paper by reason of the assignor's want of title thereto, the assignor should make good to the assignee what he has parted with in exchange for the worthless paper; but the situation is not necessarily the same when the assignee has parted with nothing, but has taken the paper in payment of or as collateral to a past-due obligation. He in that case would be out nothing, for, if the assignment should prove worthless, he would have recourse to the original past-due obligation.

In 5 C. J., 968, it is said: "In the absence of an express warranty, the assignor of a chose in action for a valuable consideration, impliedly warrants to the assignee that the chose assigned is a valid subsisting obligation in his favor against the debtor, to the extent to which it purports to be such."

In 5 C. J., 971, it is said: "The measure of the assignee's damage for breach of warranty of title and validity of the chose assigned, is generally, the amount he paid the assignor for the chose with interest and costs reasonably incurred by him in an attempt to enforce the chose against the debtor. * * * "

See, also, *Bank v. Burress,* 164 Mo. App., 690, 147 S. W., 1110; *Wait v. Williams,* 107 S. C., 32, 91 S. E., 969; *Bouknight v. Mitchell,* 132 S. C., 40, 129 S. E., 134; *Strange v. Ellison,* 2 Bailey, 385.

In the case of *Bank v. Speegle,* 91 S. C., 13, 74 S. E., 40, the bank sued as assignee of a fraudulent claim against Greenville County. It is stated in the opinion that the action of the bank was based upon the allegation that the claim was fraudulent and that the defendants by their indorsement had guaranteed its validity and hence were liable in damages for the breach of the warranty contained in their indorsement, for an amount equal to that advanced upon the claim. The Court, in sustaining the claim of the bank, said: "The whole claim, as far as Greenville County was concerned, was repudiated and declared to be fraudulent. These defendants

by their indorsement guaranteed that the claim was genuine and valid, and warranted it by their indorsement to be genuine and valid, and, when it was declared to be invalid and fraudulent, became liable by their endorsement for the amount of the loss sustained by the plaintiff, by reason of its purchasing what was supposed and purported to be an honest, valid, *bona fide* claim which turned out to be an invalid, spurious, and void claim. Here plaintiff bought what it supposed was a valid claim, guaranteed by the endorsers thereon to be such, paid out $404.00 for it, acting in good faith and paying full value. It turns out that the claim was suprious and fraudulent, in fact no claim at all. The plaintiff had paid out as it were good money for a 'Gold Brick.' It does not make any difference whether the defendant knew the claim was fraudulent or not. When defendant offered it for sale as a good claim and indorsed it, she guaranteed it to be what it purported to be, an honest, valid, *bona fide* claim and made herself liable for any breach in the warranty contained in the indorsement for the amount of loss sustained by plaintiff."

It follows that, if the plaintiff paid nothing for the assignment, she is entitled to nothing upon a claim of breach of warranty, and is necessarily remitted to the original claim which she contends was the consideration of the assignment. She is not suing upon that claim which she contends was the consideration of the assignment. She is not suing upon that claim, and the Circuit Judge has made no ruling upon the question of its validity.

If she had made such a claim, the evidence conclusively shows that the consideration was future as well as past cohabitation and is void.

In *Massey v. Wallace,* 32 S. C., 152, 10 S. E., 937, 938, the Court sustained the following charge of the trial Judge: "I will send this case to you, with this instruction: that you will find the entire amount of the note, if you find that it was intended to be entirely for the past, and with no other intercourse after that time; but if it was for all cohabitation, be-

fore and after, you will throw it all out, and find your verdict for the defendant."

The authorities hold that a consideration of past cohabitation is good; but that for future cohabitation, or in part for past and in part for future, it is bad. *Cusack v. White,* 2 Mill, Const., 284, 12 Am. Dec., 669; *Singleton v. Bremar,* Harp., 213; *Burton v. Belvin,* 142 N. C., 151, 55 S. E., 72; *Smith v. Du Bose,* 78 Ga., 413, 3 S. E., 309, 6 Am. St. Rep., 265; *Sherman v. Barrett,* 1 McMul., 147; *McConnell v. Kitchens,* 20 S. C., 430, 47 Am. Rep., 845, 6 R. C. L., 718; *Harlow v. Leclair,* 82 N. H., 506, 136 A., 128, 50 A. L. R., 973; *Bank v. Owens,* 2 Pet., 527, 7 L. Ed., 508; *Gordon v. Gordon,* 168 Ky., 409, 182 S. W., 220, L. R. A., 1916-D, 576, Ann. Cas., 1917-D, 886; *Maybank v. Rodgers,* 98 S. C., 279, 82 S. E., 422; *Rountree v. Ingle,* 94 S. C., 234, 77 S. E., 931, 45 L. R. A. (N. S.), 776, Ann. Cas., 1915-A, 1002; *Groesbeck v. Marshall,* 44 S. C., 538, 22 S. E., 743; *Hall v. Latimer,* 81 S. C., 90, 61 S. E., 1057; *Denton v. English,* 2 Nott & McC., 581, 10 Am. Dec., 638.

It is impossible, in the light of the circumstances surrounding the assignor, and of the letter to Mathews, set forth above, to conclude otherwise than that the consideration of the assignment was future as well as past cohabitation. That conclusion renders it impossible for the plaintiff to recover upon the assignment or upon a claim for breach of warranty in the assignment.

The conclusion of his Honor that the assignment is not objectionable upon the ground of fraud, duress, undue influence, or mental incapacity should be approved.

The conclusions of his Honor that the consideration of the transfer of the mortgage "was the service which Ellen Prince performed for H. J. Stockman in the care and nursing of the child, and that is, of course, a consideration both valuable and legally unobjectionable," should not be approved.

It appears that the plaintiff cared for the child about four months, at a time five years before the death of Stockman.

During that period it does not appear that the plaintiff made any demand upon him for compensation. As a matter of fact, she had been maintained in comfort and idleness, with a home, automobile, and necessaries, and her mother was also a beneficiary of the bounty of Stockman, living with the knowledge of his illicit relations. It is inconceivable that such service as the plaintiff performed for so short a time and under such circumstances was intended to be compensated for at a price of $2,500.00. It is significant that the letter to Mathews made no mention of any other consideration than the adulterous cohabitation.

As the decree bases the judgment in favor of the plaintiff against the executors solely upon the consideration just mentioned, and that being unsustainable, the order for judgment should be reversed.

The conclusion of his Honor that the note and mortgage belonged to Henrietta Stockman and that the plaintiff deliver the same to the Clerk of Court, who was directed to cancel the endorsements thereon and deliver them to Henrietta Stockman, should be approved.

The conclusion of the Court is that the opinion heretofore filed should be withdrawn, and this substituted therefor, and that the judgment of this Court should be that the decree of the Circuit Court be modified as herein indicated, and that the case be remanded to the Circuit Court for further proceedings conformable with the conclusions herein announced.

MR. CHIEF JUSTICE BLEASE, and MESSRS. JUSTICES STABLER, CARTER, and BONHAM concur.

MR. JUSTICE CARTER (concurring) :

In concurring in the opinion of Mr. Justice Cothran in this case, I desire to make this explanation: It is my understanding that it is not the intention of the Court to hold that the plaintiff has no claim against the estate of H. J. Stockman, deceased, for services rendered in caring for the child in question, or that she is precluded from establishing such claim, but that she has the right and may file and prove

against said estate such claim, if any she has, or any other claim she may have against the estate, in the manner prescribed by law. With this explanation I concur in the opinion of Mr. Justice Cothran.

MESSRS. JUSTICES BLEASE, COTHRAN, STABLER and BONHAM concur.