13854

GREENWOOD COTTON MILL v. PACE *ET AL.*

(174 S. E., 473)

Before OXNER, J., Greenville, January, 1930.

· ·Messrs. Grier, Park, McDonald & Todd and B. F. Martin, for appellant,

Messrs. Haynsworth & Haynsworth, for respondent, J. L. Pace,

May 16, 1934.

‑ ‑‑The opinion of the Court was delivered by MR. JUSTICE BONHAM.

· The appellant brought its action in the Court of Common Pleas for Greenville County to have the Court declare a judgment in its favor, to the effect that the lien of a judgment which it had obtained against American Land & Investment Company should have priority over the lien of a mortgage from American Land & Investment Company to its co-respondent, J. L. Pace.

·. .The pleadings are not included in the transcript of record and ·the statement for appeal is meager in details. But we gather from it, the decree of the Circuit Judge and the testimony the following understanding of the issues involved:

‑. .J. L. Pace and the American Land & Investment Company, which we shall call the Bank, answered the complaint. J. B. Eskew is in default and has no further interest in the case.

In June, 1929, the appellant, which we shall call the Mill, obtained a judgment against the Bank in the Court of Common Pleas for Pickens County, which was transcripted to

the Court of Common Pleas for Greenville County, and entered in the clerk's office there January 16, 1930. The basis of the judgment was a debt contracted in 1926. J. L. Pace had purchased from the American Bank & Trust Company, the predecessor of the American Land & Investment Company, certain notes and mortgages, among which was a note and mortgage given by T. A. Honour in the sum of $4,-500.00. The Bank gave to Pace a trust receipt by which it stipulated that it held in trust for the account and subject to the order of J. L. Pace or of Mrs. Caroline P. Pace all of the notes and mortgages therein listed, which included the T. A. Honour note and mortgage, and it contained the further stipulation binding the Bank to repurchase the papers at the sale price plus interest. The Bank retained the papers in its possession; collected the interest from year to year which was turned over to Pace. The Honour papers are dated February 11, 1923. Honour became in default in the payment of interest, and in August, 1929, the Bank instituted foreclosure proceedings in its own name. At the sale the Bank bid in the property at $100.00, although the mortgage debt then amounted to $4,500.00 with more than two years' interest added. The property was estimated to be worth more than $6,000.00. The Master for Greenville County, who made the sale, executed and delivered to the American Land & Investment Company a deed for the land thus sold under foreclosure, and on the same day the Bank made to J. L. Pace a mortgage of this land in the sum of $4,500.00. It appears that the deed and mortgage were delivered to the Register of Mesne Conveyance on January 17th.

Plaintiff's contention is that the American Land & Investment Company purchased the mortgaged land at the foreclosure sale, took deed to itself, and made its mortgage to Pace. That this wrought a novation of the old Honour mortgage which the Bank had sold to Pace and extinguished the lien of the Honour mortgage. That the transcript of its judgment from Pickens County to Greenville County was

made and entered January 16, 1930, and the deed to the Bank and its mortgage to Pace were made the same day (January 16, 1930), but not delivered for record till January 17, 1930, and the deed delivered to the Bank some days later. Hence, as the deed did not vest the title in the Bank until its delivery, the lien of plaintiff's judgment took priority over that of Pace's mortgage.

Defendant's contention is that the trust relation between J. L. Pace and the Bank was not affected by the proceedings in foreclosure and sale thereunder, but created a lien upon the premises which was not divested by the claims of prior creditors.

The case was heard by Judge Oxner on the testimony taken by a special referee. In his decree he held that under the doctrine of equitable trusts, the lands in the hands of the Bank are charged with a lien in favor of J. L. Pace for the full amount of the Honour mortgage which the Bank had sold to him. He held further that Pace's rights may be maintained on the ground that his mortgage is a purchase-money mortgage.

From this decree the plaintiff appeals upon fourteen exceptions. But the appeal turns upon the determination of the question whether Pace has an equitable lien upon the lands in the hands of the Bank.

We concur with the Circuit Judge in his conclusion that Pace has a lien on the land prior to that of appellant.

There can be no dispute of the fact that when the Bank sold to Pace certain securities, including the Honour note and mortgage, and gave him the receipt, which is in evidence, there was established a relation of trust between them by which the Bank was obligated to protect the interests of the *cestui que* trust. It guaranteed to him the payment of this note and mortgage. As trustee of this express trust the Bank was authorized by Section 399 of the Code of Civil Procedure 1932 to bring the action for foreclosure in its name. That section is in these words: "An

executor or administrator, a trustee of an express trust, or a person expressly authorized by statute, may sue, without joining with him the person for whose benefit the action is prosecuted. A trustee of an express trust, within the meaning of this section, shall be construed to include a person with whom, or in whose name, a contract is made for the benefit of another."

It is argued for appellant that the internal evidence of the transaction and the testimony in the record show that the Bank bought the land for itself, at the foreclosure sale, took title to itself and secured Pace by giving him its mortgage. We think, on the contrary, that the analysis of the internal evidence and the testimony in the record shows that the Bank knew that Pace's lien attached to the land in its hands. It certainly did not understand that it could buy this land, worth some $6,500.00, for the pitiful sum of $100.00, and pay off Pace by giving him a mortgage for $4,500.00 in satisfaction of a debt which exceeded the sum of $5,100.00. The analysis of the whole transaction shows that it was intended to protect Pace in the safety of his position as the holder of a mortgage which had been sold to him by the Bank, and which the Bank held in trust for him, and the collection of which, with its accumulation of interest, the Bank had guaranteed. There was no merger of the equitable lien of Pace's mortgage, the Honour mortgage, because there was no intention to merge. It is not reasonable to suppose that Pace would have merged his equitable rights in the mortgaged property in consideration of a mortgage for a less amount than was due him. It is true he said he did not want the land, but that is far from saying that he was relinquishing his lien thereon and his guaranty by the Bank. This contention is aptly disposed of by the opinion of this Court in the case of *McCraney v. Morris,* 170 S. C., 250, 170 S. E., 276, 279, which is cited in the circuit decree. Mrs. McCraney held a mortgage against the lands of Mrs. Edna Morris, which was past due

and upon which foreclosure was threatened. But instead, it was agreed that Mrs. McCraney would accept a deed to the land in payment of her debt and would mark the mortgage satisfied of record. This agreement was consummated. It thereafter developed that Mrs. Morris had mortgaged the same land to her brother-in-law, Henry Morris, which mortgage was of record but of which fact Mrs. McCraney was not informed. She repudiated the contract to accept title to the land and satisfy the mortgage, and brought action to foreclose her mortgage and declare the lien thereof to be superior to the lien of the mortgage of Henry Morris. She appealed from an adverse decision of the Circuit Court, which held that Mrs. McCraney was barred of the right to recover because her mortgage was merged in the deed. Chief Justice Blease, delivering the opinion of this Court on appeal, said: "We think that the master and the circuit judge, both of whom evidently gave the case careful consideration, have overlooked the leading case in this state on the subject of merger, that of *McCreary v. Coggeshall,* 74 S. C., 42, 53 S. E., 978, 982, 7 L. R. A. (N. S.), 433, 7 Ann. Cas., 693. The opinion of the distinguished jurist, Mr. Justice Woods, in that case was said by this court in the later case of *Owings v. Graham,* 120 S. C., 408, 113 S. E., 279, to have been a 'masterful opinion.' After reviewing many, if not all, of the former decisions of this court on the law of merger, including the *Richardson* [26 S. C., 401, 2 S. E., 307] and *Bleckeley* [28 S. C., 445, 6 S. E., 291] *Cases,* cited in the report and decree in the lower court, Mr. Justice Woods, for this court, said: 'From this review we think it clear the later cases in this state establish the proposition, which as we have seen is in accord with the doctrine universally recognized in other jurisdictions, that in equity at least merger will not take place if opposed to the intention of the parties, affirmatively proved, or to be implied from the fact that merger would be opposed to the interest of the person in whom the different estates or interests became united.' "

The opinion of the Chief Justice in the *McCraney v. Morris case* cites with approval the following quotations from Jones on Mortgages (8th Ed.), Vol. 2, pages 508–521: "The expressed intention will control; but in the absence of such express intention on the part of the mortgagee his intention will be presumed in accordance with his interests."

Further from page 523: "When there is no evidence of the intention of the owner in uniting the legal and equitable estates in himself, it is proper to presume that he intended that effect which is the most beneficial to himself."

If there was no merger, the lien of Pace's mortgage remained attached to the mortgaged premises.

In *Ex Parte Johnson,* 147 S. C., 259 *et seq.,* 145 S. E., 113, 122, it appears that Johnson had a mortgage, originally given to Livingston and assigned to Johnson, on the undivided interest of Bradford Keel, devised to him, as one of a number of tenants in common, under the will of his father. The executor, by virtue of the power given him in the will, sold the real estate to Bradford Keel, S. A. Keel, and W. H. Keel. They borrowed from the Bank of Western Carolina a part of the purchase money and mortgaged the land as security, which mortgage was junior in date to the Livingston-Johnson mortgage. The Bank foreclosed its mortgage without making Livingston or Johnson parties, but upon petition Johnson was allowed to come is as a party before the application of the proceeds of sale had been made. The issue on this aspect of the case was over the priority of the liens of the mortgagees. The Circuit Judge decreed that the Bank's mortgage had priority. This Court, in the main opinion, written by Chief Justice Blease, held this: "Had Bradford Keel and the other two purchasers paid in the entire $30,000, the amount of the purchase of the land, they each would have been entitled to something over $3,000 under the order of the decree in partition. Had they paid in this amount, the Johnson mortgage would have attached to Bradford Keel's share. Such share, therefore, would have

been a trust fund in the hands of the executor. Had the executor paid this fund over to Bradford Keel and he had invested the same in the purchase of this tract of land and taken title in himself, there can be no question but that there would have been a resulting trust in favor of Livingston, or his assignee, Johnson, for where trust funds are used in the purchase of property and title is taken in the name of the fiduciary, or in the name of a third person, a resulting trust immediately arises in that property in favor of the person or persons entitled to the funds with which the property is purchased. *Kirton v. Howard,* 137 S. C., 11, 134 S. E., 859."

Mr. Justice Cothran wrote a dissenting opinion, but as to this especial question he concurred with the main opinion. He said: "In other words, Johnson claims that the lien of his mortgage upon the undivided interest of Bradford Keel, in the land, has been transferred to the interest of Bradford Keel in the proceeds of sale; a contention which I think is entirely correct."

It is true that he said also that that extinguished the lien of the mortgage. But it must be remembered that that was a suit in partition, and hence the purchasers took a clear title. But the present case is one arising out of a sale in foreclosure in which the fiduciary bought in the land and took title to itself. *But it bought it for a nominal sum, and did not pay in the sum for the payment of which the land was sold and for which it was the trustee of Pace.* Therefore, there were no funds, the proceeds of sale, to which the lien of Pace's mortgage could be transferred; hence the lien remained attached to the land.

In the case of *Prince v. Mathews,* 159 S. C., 526, 157 S. E., 836, 838, the action was one for the foreclosure of a mortgage which was made to Henrietta Stockman, a minor daughter of H. J. Stockman, by one Mathews, and which was assigned by H. J. Stockman to the plaintiff, Ellen Prince. Mr. Justice Cothran for the Court affirmed the fol-

lowing holding of the circuit decree: "His honor held that Stockman, by taking the Mathews' note and mortgage in the name of his daughter, intended to give her the benefit of the same; that he thereby became a trustee for her; that he had no legal right to transfer the note and mortgage to himself."

The Bank in our present case could not have reassigned to itself the note and mortgage of Honour which it had assigned to Pace, but which remained in its possession. It would not, therefore, be permitted, even if it desired to do so, which evidently is not its desire, to possess itself of the mortgaged premises by the expedient of foreclosing the mortgage and purchasing the land for a nominal sum.

"Trusts are always imperative and obligatory on the conscience of the person intrusted." *Hirschmann v. Gantt et al.,* 136 S. C., 1, 134 S. E., 230, 231.

The appellant urges the proposition that when the ■ Bank took the title to the land in its own name and gave Pace its mortgage for $4,500.00, there was a novation effected by which the Honour mortgage was extinguished.

The doctrine of novation is fully considered in the case of *Ophuls & Hill, Inc., v. Carolina Ice & Fuel Company,* 160 S. C., 441, 158 S. E., 824, 828. The opinion in that case cites and adopts the following utterances:

"A novation may be broadly defined as a substitution of a new obligation for an old one, which is thereby extinguished. More specifically, novation is the substitution *by mutual agreement,* of one debtor, or one creditor, for another, whereby the old debt is extinguished, or the substitution of a new debt, or obligation for an existing one, which is thereby extinguished. It is a mode of extinguishing one obligation by another; the substitution, *not of a new paper, or note, but of a new obligation* in lieu of an old one—the effect of which is to pay, dissolve, or otherwise discharge it." 46 C. J., 573, 574.

"Novation exists only by reason *of an agreement and in the absence of such an agreement there can be no novation of the character now under consideration.* Hence, in order to effect a novation by the substitution of a new obligation between the same parties *there must appear the consent of both contracting parties* that the new agreement is to have this effect. *The sole intention of the obligor that the existing contract should be discharged by the new agreement is not sufficient; the creditor must concur in this."* Ibid.

The novation of a contract is thus defined in 20 R. C. L., 360, quoted with approval in *Smith Bros. Grain Co. v. Adluh Milling Company,* 128 S. C., 434, 122 S. E., 868: "A mutual agreement between all parties concerned for a discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor." 20 R. C. L., 363, 29 Cyc., 1130.

There is here no particle of proof of an agreement by both parties to substitute the mortgage of the Bank for the Honour mortgage, and there is none from which it can be rationally deduced that Pace agreed to accept the Bank's mortgage for $4,500.00 in the stead, and in extinguishment of the Honour mortgage of more than $5,-100.00 in value, the payment of which is guaranteed by the Bank.

We concur in the conclusion of the Circuit Judge that the lien of the Honour mortgage still attaches to the mortgaged land; and that it is in priority of the lien of plaintiff's judgment. We do not consider it necessary to determine the question whether the claim of priority by Pace on the ground that his mortgage from the Bank represents purchase money. As to that we express no opinion. The other issues, made by appellant, have, by our conclusion of the issue of equitable lien, become academic.

The appeal is dismissed, and the judgment is affirmed.

MR. CHIEF JUSTICE BLEASE, MESSRS. JUSTICES STABLER and CARTER, and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.