## BLECKELEY, BROWN & FRETWELL v. BRANYAN.

1. At the hearing of a former appeal in this case (*Bleckeley* v. *Branyan,* 26 S. C., 424), it was held that the mortgage debt and lien of plaintiffs had been extinguished by their purchase from defendant of the mortgaged land; and that decision, therefore, operated as a dismissal of the complaint, which sought to enjoin the enforcement of judgments entered up after the mortgage, but before the purchase.

2. Where the complaint has been dismissed, it is improper to allow an amendment making a new cause of action.

3. The owners of land will not be affected by a sale under judgments that are nullities; but after decree adjudging such judgments to have a lien, it cannot afterwards be asserted that they are nullities upon a ground which could have been, but was not, urged at the first trial.

4. A mortgagee who purchases the equity of redemption without due inquiry as to intermediate liens cannot complain of the well settled rule of law that extinguishes the mortgage lien in such case and leaves the land subject to the judgment liens. Even if such a rule be harsh, it is not the province of the courts to change the law.

Before ALDRICH, J., Abbeville, June, 1887.

The order appealed from was as follows:

The defendant, Branyan, executed several mortgages to plaintiffs to secure debts then due. He afterwards conveyed the mortgaged premises to plaintiffs in satisfaction of his mortgage debt and his notes and mortgages were delivered to him. McGhee held a senior mortgage. Judgments were recovered by the defendants against Branyan after the execution of the mortgages and before the delivery of the title to the land. The sheriff levied on the land and the same was advertised for sale to satisfy the

judgments. The plaintiffs filed their complaint to enjoin the sale. The cause was heard by his honor, Judge Hudson, who granted the injunction. An appeal was taken and the decree of Judge Hudson reversed. The case now comes up on a motion to amend the complaint by making the assignee of the McGhee mortgage a party, and charging that the judgments are null and void. The judgment creditors resist this motion.

I am not at all surprised that his honor, Mr. Justice McGowan, expresses the regret of the court that they feel compelled by the weight of authority to overrule the decree of Judge Hudson, which is in strict accord with the equity and justice of the cause. Here is a *bona fide* mortgagee who has invested his money on the security of unincumbered land after inquiry of the sheriff of Abbeville if there were judgments against the mortgagor. Being informed there were none, he takes his mortgage and pays out his money in good faith. Subsequently the defendants obtained judgments in Abbeville and issued execution. After the judgment and execution of the defendants were entered, Branyan, in settlement of his mortgage debt, conveyed the mortgaged premises to plaintiffs. It was the same land, the same debt, yet the court of last resort feel constrained by a stern rule of law to hold, you cannot secure this *bona fide* debt, which has been honestly contracted and honestly protected. It may well cause regret that such a violation of conscience and equity is possible.

Now, the plaintiffs, who are residents of Anderson, ask leave to amend, because it did not come to their knowledge that this land was advertised for sale in Abbeville until Friday evening before the day of sale. Mr. Whitner, their attorney, had to prepare their complaint Saturday and send it across the country Sunday, there being no train on the G. & C. R. R. Since then he has discovered that these suits of the defendants were commenced and judgments obtained in Abbeville when the defendants were residents of Anderson. Under the decisions of our courts the judgments are nullities. It is stated they are without consideration and fraudulent. Hence the court is asked to allow the complaint to be amended to prevent this injustice. The Supreme Court has only decided that it was error in Judge Hudson to rule that the junior conveyance of land secured by the older mortgages

was a superior lien to the judgments.  The same parties are before the court, except McGhee, who has since assigned his older mortgage to plaintiff, Fretwell.  The same subject matter is to be litigated.  Why delay to incur protracted litigation and additional expense?  I see no reason for it.  The plaintiffs have my sympathy, as well as that of the Supreme Court.  They shall be no longer hindered in establishing their just demands.  I think this application is reasonable and just.  If the allegation be true, it will save delay.  If not true, it will prevent protracted litigation and increased expense.

It is therefore ordered, that J. J. Fretwell, who has purchased the debt and mortgage of McGhee, be substituted, as defendant and allowed to answer.  It is further ordered, that the plaintiffs be allowed to amend their complaint by alleging that at the time of the recovery of said judgments of the said Sarah J. Martin and A. T. Armstrong, and of the commencement of the action in which the same were recovered, the defendant, D. S. Branyan, resided in the County of Anderson, in said State, and the Court of Common Pleas for the County of Abbeville was without juris-. diction in the premises.  And to add a prayer to set aside said judgments as void.  And it is further ordered, that the said Sarah J. Martin and A. T. Armstrong, their agents and servants, and the said J. F. C. DuPre, sheriff of Abbeville County, be enjoined from selling the tract of land described in the complaint, or any part thereof, under the judgments of the said defendants until the further order of the court.

The judgment creditors appealed on the following grounds :

1. That it was error to grant the motion to amend the complaint after the case had been heard by the Supreme Court.

2. That it was error to allow J. J. Fretwell to be made a party defendant, because such an amendment was not asked in the notice.

3. That it was error to restrain the defendants from advertising the land for sale under their judgments, because such an order of injunction overrules the judgment of the Supreme Court, which reversed the decree of Judge Hudson.

4. Because the domicile of D. S. Branyan was alleged by Sullivan in his answer to the original complaint to have been in Anderson County.

5. Because the amendment was illegal.

*Messrs. Benet & Cason*, for appellants.

*Mr. B. F. Whitner*, contra.

April 7, 1888.    The opinion of the court was delivered by

MR. JUSTICE MCIVER.    This being the second appeal in this case, reference may be had to the case as reported in 26 *S. C.*, 424, for a more full statement of the facts than it is deemed necessary to make here.    It will be sufficient to say that the action was brought by the plaintiffs against D. S. Branyan, A. T. Armstrong, Sarah J. Martin, as administratrix of Pinckney Martin, deceased, J. M. Sullivan, H. P. McGhee, and J. F. C. DuPre, as sheriff of Abbeville County, mainly for the purpose of enjoining the sale of defendant, Branyan's, land by the sheriff under executions, issued on judgments recovered by the defendants, Armstrong, Martin, and Sullivan, against said Branyan ; the plaintiffs alleging that they had held mortgages on the land senior to the judgments, which they had surrendered, together with the notes which the mortgages were intended to secure to Branyan in exchange for a conveyance by him to them of the said land, which conveyance was subsequent in date to the judgments. The plaintiffs, therefore, sought to set up their mortgages as prior liens on the land, and to have the land sold under said mortgages and the proceeds of the sale, after satisfying the mortgage to McGhee, which was conceded by all parties to be the first lien on the land, applied to the mortgages which plaintiffs sought to set up.

The case was originally heard by Judge Hudson, who rendered judgment in favor of the plaintiffs, ordering that the judgment creditors be enjoined "from selling anything more than the equity of redemption of the said D. S. Branyan in said lands and subject to the prior mortgage liens of said plaintiffs." This judgment was rendered upon an agreed statement of facts, from which we extract the following : "At the February term (1885) of the Court of Common Pleas for Abbeville the defendant, Sarah J. Martin, as administratrix, recovered judgment against the said D. S. Branyan for one thousand six hundred and eighty-six 19–100

dollars and costs, and the defendant, A. T. Armstrong, also recovered judgment against him at the same term for one hundred and fifty-eight 75–100 dollars and costs, both of which were entered of record in the office of clerk of said court for said county on February 20, 1885, and remain wholly unpaid." From this judgment of Judge Hudson the present appellants appealed, and the same was reversed by this court, in which it was held that the plaintiffs, by their purchase of the mortgaged property from their mortgagor, had extinguished their debt, together with their lien on the land.

At the term of the Circuit Court next succeeding the filing of the decision of this court, the plaintiffs moved to amend their complaint by substituting J. J. Fretwell, one of the plaintiffs herein, in the place and stead of the defendant, McGhee, upon the allegation that McGhee had, pending the action, assigned his mortgage to said Fretwell, and also by inserting in their complaint an allegation that the defendant, Branyan, being a resident of the County of Anderson at the time the appellants commenced their actions against him, the court in Abbeville had no jurisdiction of said actions, with a prayer that their judgments be set aside as null and void. Judge Aldrich granted an order allowing both of these amendments and enjoining the appellants, as well as sheriff DuPre, from selling the land until the further order of the court. From this order A. T. Armstrong and Sarah J. Martin appeal upon the several grounds which will sufficiently appear in the further discussion of this case.

It seems to us that the former decision of this court operated, necessarily, as a dismissal of the complaint, and therefore no amendment could properly be allowed. If, as was then determined, plaintiffs' mortgage debt, as well as their lien on the land, was extinguished by their purchase of the mortgaged property, it is quite clear that the plaintiffs had no such cause of action as that set up by them in their complaint, and, therefore, they cannot be permitted by any amendment whatever to set up some other cause of action. *Kennerty* v. *Etiwan Phosphate Company*, 21 *S. C.*, 226. The fact that the plaintiffs, in their complaint, had mentioned the prior mortgage to McGhee, and in their prayer for relief had conceded his right to be first paid out of

the proceeds of the sale, which they asked for under their alleged mortgages, cannot affect the question. He was not making any demand for relief, and had filed no answer. But even if he had been making such demand, it is not easy to perceive what cause of action he could have had against the appellants as judgment creditors. For if his mortgage was a prior lien upon the land, as seems to be conceded on all hands, we do not see how his rights were invaded, or in any way affected by the proposed sale under the judgments, as such sale would necessarily have been subject to his prior lien. It seems to us that, after the former decision of this court, the plaintiffs occupied simply the position of purchasers of the land, holding the legal title thereto, and as such they had no ground to enjoin the sale under appellants' judgments. *Wilson* v. *Hyatt, McBurney & Company*, 4 S. C., 369. For if these judgments are nullities, or for any other reason have no lien on the land, its sale under such judgments could do the holder of the legal title no harm, and hence there would be no ground for the interposition of the court.

But if we are in error in this, the amendment should not have been allowed, under another view, which may prove much more serious in its consequences to the plaintiffs. At the former hearing the plaintiffs contended that the lien of appellants' judgments should be subordinated to their lien which they sought to set up and restore. In that controversy the question as to the lien of the judgments was necessarily involved, and if they were nullities, as the plaintiffs propose to allege by their amendment, they were certainly no lien at all, and having failed when the opportunity was afforded to make such allegation and proof, they cannot now be permitted to do so. There must be an end of litigation somewhere, and parties cannot be permitted to try their cases by piece-meal. In *Fraser & Dill* v. *City Council of Charleston* (19 S. C., 384), judgments were recovered against an executor upon notes which were alleged to be forgeries, perpetrated by the executor himself, and the court held that these judgments were conclusive against the parties beneficially interested in the estate, upon the ground that the genuineness of the notes was necessarily involved in the actions on the notes, even though it did not appear that any question as to their genuineness had been raised,

or any evidence as to that point had been offered. This case is much stronger than that. Here the omission to raise the question now sought to be raised was the fault of the plaintiffs themselves, while there the fault was in the executor. If the failure of an executor to make a question which could, and should, have been made, precludes the parties beneficially interested from afterwards raising such question, surely the failure of the plaintiffs themselves to make a question which could and should have been made at the former hearing should have the like effect. See, also, *Maxwell* v. *Connor*, 1 *Hill Ch.*, 14, and *Hand* v. *S. & C. Railroad Company*, 17 *S. C.*, 219.

Suppose this amendment should be allowed and upon the trial it should be established that Branyan was a resident of Abbeville County at the time the actions were commenced against him, could the plaintiffs then be permitted to make another amendment alleging that Branyan had never been served with a summons in either of the actions, and the court had, therefore, never acquired jurisdiction? And suppose this second amendment should be allowed and it should turn out at the trial that Branyan had, in fact, been served, could the plaintiffs then be permitted to make still another amendment alleging that the judgments were void for fraud in obtaining them? Surely not, and yet there seems to be the same reason for granting either of such amendments as the one now proposed.

A great deal has been said by the Circuit Judge as to the hardship of this case, but perhaps when the facts are considered the hardship will not be so apparent, or at least, if there is any hardship in the case, it is due solely to the negligence of the plaintiffs themselves. If the plaintiffs had used the most ordinary precautions before entering into the arrangement with Branyan by which they took a conveyance from him of the land, in satisfaction of their mortgage debt, they would have escaped the injury of which they now complain. But instead of doing so they contented themselves with an inquiry, made more than three months before, not of the clerk of the court, who was the proper officer to afford the desired information, but of the sheriff, who was not the proper officer for that purpose, and with the guaranty of their debtor that the land was free from all liens except that of

McGhee.  The law has provided ample means to enable persons who are desirous of buying property to ascertain whether the property is subject to any lien, and if a person fails to avail himself of the means thus provided, and he suffers loss by reason of his omission to do so, he must take the consequences of his own negligence, and has no one to blame but himself.

How does this case differ from one which has frequently happened from a similar cause—negligence in using the means provided by law for the protection of purchasers—where a person buys property without taking the trouble to inquire in the proper way, and from the proper source, and at the proper time, whether the property is subject to any incumbrance, and after he has paid his money discovers that there was an outstanding lien, of which he could have learned by proper inquiry, by reason of which he loses the property as well as the money he has paid for it ?  While we may sympathize with such a person, and regret that he has sustained such loss upon the same principle that we sympathize with one who has met with any other misfortune, even though it be due to his own fault or folly, yet the propriety of characterizing it as a hardship, and especially as a hardship due to the enforcement of a rigorous rule of law, is not so readily recognized by every one.  If the plaintiffs, instead of accepting the conveyance of the land in satisfaction of their mortgage debt, had chosen to accept some other species of property, which they might have done, and such property had, immediately afterwards, become absolutely worthless in their hands, even without any fault on their part, that would, in one sense, be a much harder case than this ; for there the loss would not be due to the fault of the plaintiffs, while here it is, and yet it would scarcely be said in such a case that the hardship resulted from any rule of law.

The plaintiffs must, like every one else, be presumed to have known the law, and as shown by Mr. Justice McGowan in the former opinion in this case above referred to, the law, in this State, was settled, by a long line of adjudications, both in law and equity, extending from as far back as 1821 down to 1883, "that a mortgagee who buys the estate under mortgage not under process of foreclosure of his lien extinguishes the debt or claim, with lien on the land ;" and that the only exception to this rule

is the one recognized in *Agnew* v. *Railroad Company*, 24 *S. C.*, 18, whereby the mortgagee may, by express agreement in writing, protect himself from such a result.    Yet in face of this well settled law the plaintiffs deliberately took from their mortgagor a conveyance of the mortgaged property, without inquiring from the proper source, *and at the proper time*, whether there were any intermediate liens, and without taking the precaution to protect themselves by any express agreement for the preservation of the priority of their lien, as in Agnew's case, but on the contrary contenting themselves with the simple guaranty of the mortgagor that there were no such liens.    Now, when it appears that, *in the interval of more than three months, which elapsed after the plaintiffs made their inquiry of the sheriff, and before the plaintiffs accepted the conveyance*, other liens had been fixed upon the land, by reason of which the plaintiffs are likely to suffer, how can it be claimed that any loss which the plaintiffs may sustain is due to anything else but their own negligence?

But be all this as it may, and even assuming that this is a case of great hardship, due solely to the operation of a rigorous rule of law, we do not see how that can affect this case.    The function of a court of justice is to administer the law as they find it written and declared by the proper authority, and we, certainly, disclaim any authority to alter or even bend it to suit any fancied notions of abstract justice.    If cases are to be decided by courts of law, not upon the settled principles of law, but upon what individual judges may regard as abstract justice, then, indeed, would law cease to be a *rule* of action, and the rights of parties, instead of being fixed and certain, would be as uncertain as the ever varying tempers and sentiments of individuals.    As has been well said, "no servitude is so intolerable as under a system *ubi lex aut vaga aut incerta est.*"    Or, to use the language of that distinguished jurist, Chancellor Harper, who, certainly, was never supposed to be wanting either in kindness of heart or reverence for justice, in speaking of the hardship of a particular case, "but the wholesome rules of law cannot, for that reason, be broken down.    In that case ten would suffer for the one relieved."

The judgment of this court is, that the order of Judge Aldrich be reversed and set aside.