13672

McCRANEY v. MORRIS *ET AL.*

(170 S. E., 276)

*Messrs. W. Marshall Bridges* and *E. H. Henderson,* for appellant,

*Messrs. Kearse & Kearse,* for respondent,

July 19, 1933.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

In this cause, the complaint, after setting forth allegations appropriate thereto, prayed for judgment against the defendant Mrs. Edna M. Morris for the amount found to be due on a bond and mortgage executed by her to the plaintiff, for the foreclosure of the mortgage, and that the decree of the Court declare junior and subordinate to the plaintiff's mortgage debt a mortgage of the defendant Henry Morris and a judgment of the defendants Brown & Bush.

The defendant Mrs. Morris, the mortgagor, defaulted.

The defendant Henry Morris alleged that the plaintiff's mortgage had been satisfied and discharged; that the plaintiff had accepted in such satisfaction a deed of the mortgagor to the premises covered by the mortgages; that the plaintiff's mortgage had become merged in her title; and that the mortgage of this defendant was a first lien on the property.

The defendants Brown & Bush, a law firm composed of Messrs. Edgar A. Brown and J. Julien Bush, set up as a lien on the premises involved in the suit a judgment obtained by them against their codefendant Mrs. Morris. It appears, however, that these defendants, except in the filing of their answer, have not taken a very active part in the litigation.

The contest is mainly between the plaintiff, who is appellant in this Court, and the defendant Henry Morris, one of the respondents.

The master, to whom the cause was referred, found in favor of the claim of merger, and his report was affirmed by his Honor, Circuit Judge Johnson.

The evidence taken in the case discloses the following undisputed facts:

Mrs. McCraney, on April 8, 1927, loaned to Mrs. Morris $400.00. The debt was evidenced by the bond of Mrs. Morris to Mrs. McCraney, payable in two equal annual installments on October 15, 1927, and October 15, 1928, with interest from date at the rate of 8 per cent. per annum, and the usual terms as to attorney's fees were stipulated. To secure the payment of the bond, Mrs. Morris mortgaged to Mrs. McCraney certain real estate in the Town of Olar. The mortgage was duly recorded on April 22, 1927. At the time of the commencement of the suit, there was due on the bond and mortgage $490.00, with interest from December 3, 1931.

On October 10, 1928, Mrs. Morris mortgaged the same real estate to her brother-in-law, Henry Morris, to secure a debt of $340.00, payable on October 1, 1929, and this mort-

gage was duly recorded on February 26, 1929. No part of this mortgage debt has been paid.

On October 20, 1931, a judgment against the defendant Mrs. Morris in favor of Brown & Bush was properly entered up. Mrs. McCraney had no actual notice of this judgment until the commencement of this suit.

In the fall of 1931, Mrs. McCraney pressed for the payment of the debt due to her. The mortgagor could not pay. Finally, F. V. Morris, the husband of Mrs. Edna M. Morris, who was representing his wife in the transaction with Mrs. McCraney, agreed that, upon the payment by Mrs. McCraney of the sum of $12.00, Mrs. Morris would convey the mortgaged premises to Mrs. McCraney in settlement of her mortgage debt; and, accordingly, Mrs. Morris, on December 3, 1931, conveyed the property to Mrs. McCraney. A few days later Mrs. McCraney marked her mortgage satisfied and delivered the same to Mrs. Morris, who proceeded to have the satisfaction entered of record. At the time of the acceptance of the deed, Mrs. McCraney had no actual knowledge of the Henry Morris mortgage.

After accepting the deed, Mrs. McCraney paid on the property delinquent taxes for two or three years due to the State, county and Town of Olar.

Learning of the mortgage on the property held by Henry Morris, upon the advice of counsel, Mrs. McCraney, taking the position that she had been misled, repudiated the contract she had made as to the conveyance of the property and the satisfaction of the mortgage, and returned the deed to Mrs. Morris, and soon thereafter instituted this suit.

While in some ways the evidence as to the value of the involved real estate was conflicting, we think it is clear that it is not now, nor was it at the time of the execution of the deed, of sufficient value to more than pay the debt due to Mrs. McCraney. Certainly, its value then was, and is now, not sufficient to pay the debt due on both mortgages.

The deed from Mrs. Morris to Mrs. McCraney was prepared, and the execution attended, by a notary public, not a lawyer, who had previously looked after the preparation and execution of the mortgage to Henry Morris. The notary public did not inform Mrs. McCraney of the Henry Morris mortgage, and testified that he had forgotten about this paper at the time the deed was executed.

The disputed evidence in the case, although there is no difference which is really vital, relates to the question of merger.

Mrs. McCraney testified that after vainly endeavoring to get some small payment on her mortgage debt, she notified the husband of the mortgagor that she would be forced to enter foreclosure proceedings; that upon a suggestion on the part of F. V. Morris that his brother, Henry Morris, might be interested in the property, and it might be well for Mrs. McCraney to see Henry Morris, Henry Morris did go to see her. She offered to let Henry Morris have the place for $450.00. He did not accept, stating that it was not worth that price, and that he would not put so much money in it. Henry Morris did not tell her of the mortgage he held. Neither did Mrs. Morris or F. V. Morris give her any information as to that mortgage being in existence. The first she knew of the Henry Morris mortgage was when the latter wrote her, after she had accepted the deed from his sister-in-law, demanding payment of his mortgage debt. Nothing was ever said by any one to the effect that Mrs. McCraney was to assume the payment of any mortgage or judgment. If she had been advised of the existence of these liens, she "would not have thought of accepting the deed." The reason she did not examine the records as to liens on the property was because she "always took them to be honest." Mr. F. V. Morris wrote her and told her that she would get a clear title to the property.

The notary public, Mr. Sanders, testified that when he prepared the deed from Mrs. Morris to Mrs. McCraney, and

saw to the proper execution of the paper, nothing was said as to any other liens on the property.

F. V. Morris, husband and agent of the mortgagor, testified that he and his wife were unable to pay the mortgage debt to Mrs. McCraney. After some discussion, so he swore: "I told her that I would go and see my brothers, and see what they would do to help me. I told her my brother Henry might help me, as he had an interest in it; that he would probably take up her mortgage if they could come to terms." (Mrs. McCraney said she thought the "interest" of Henry Morris referred to was the fact that the property had formerly belonged to the father of F. V. and Henry Morris.) This witness further said: "I told her (Mrs. McCraney), I would give her a title, but I did not say anything about a clear title." While disclaiming that he said anything to Mrs. McCraney to mislead her, he admitted, "I did not tell her that there were no (any?) mortgages over the property," although he knew of the existence of the mortgage held by his brother. Mrs. McCraney did not satisfy her mortgage immediately upon execution of the deed. Later, at the urgent request of the witness, the satisfaction was executed on December 10, 1931, and entered of record on December 15th. The reason he did not tell Mrs. McCraney of the mortgage was because "the public records were open." The title which he had his wife give her was in full settlement of the mortgage.

Mrs. Morris left the matters almost entirely to the handling of her husband, but on cross-examination she testified: "I did not tell her (Mrs. McCraney), that this mortgage (the one to Henry Morris), was of record. I thought the records showed for themselves. I did not know anything about the judgment. They have not let me know anything about the Brown & Bush suit. * * * Mrs. McCraney was supposed to look up the records. She might have thought it was all right, but she should have searched the records."

Henry Morris testified that he went to see Mrs. McCraney because his brother, F. V. Morris, had told him that Mrs. McCraney wanted to see him. He made Mrs. McCraney two or three offers, and she did not accept any of them. While insisting that he did not make any statement to Mrs. Mc-Craney which would lead her to believe that he did not have a mortgage over the property, he admitted: "I did not come right out and tell her that I had a second mortgage. It was at the court house for her to see."

It seems clear from the evidence that after Mrs. Mc-Craney had paid F. V. Morris for his wife $12.00 in cash, and had paid the past-due State, county and municipal taxes on the property, and after the satisfaction of her mortgage had been entered of record, immediately, just one day fol-lowing. that satisfaction, Henry Morris demanded of Mrs. McCraney the payment of the debt due to him by his sister-in-law, and this was the first information that Mrs. Mc-Craney had of the existence of the Henry Morris mortgage. Although knowing of the execution of the deed to Mrs. McCraney thirteen days previous to the satisfaction of the mortgage on the record, Henry Morris made no demand for his money until his brother had the satisfaction of the Mc-Craney mortgage entered on the record.

The facts as developed in the testimony in the cause do show, as argued by counsel for Henry Morris, that Mrs. McCraney was not misled by any positive statement made to her by either Mrs. Morris, her husband, or her brother-in-law, Henry Morris, as to the nonexistence of any lien on the property; but they are convincing that she was misled by the silence on the part of all three of them as to the fact that the Henry Morris mortgage did exist.

The master, while holding there was a merger, said: "It seems to me that this is a very hard case." The learned Cir-cuit Judge in his decree, while upholding the master's con-clusion that Mrs. McCraney was barred from the relief she sought because of the law of merger, said: "This is a hard

case, and if I felt I could legally do so, I would gladly grant the plaintiff relief."

The conclusions of both the Circuit Judge and the master seem to have been based very much upon their finding that Mrs. McCraney's unfortunate position was due solely to her negligence in not having the records examined and in her failure to directly ask Mrs. Morris and her husband as to junior encumbrances.

To sustain his conclusion, the master relied upon the cases of *Navassa Guano Co. v. Richardson,* 26 S. C., 401, 2 S. E., 307, and *Bleckeley v. Branyan,* 28 S. C., 445, 6 S. E., 291. The Circuit Judge rested his conclusion upon those two cases and a decision of the Supreme Court of Georgia in *Woodside v. Lippold,* 113 Ga., 877, 39 S. E., 400, 84 Am. St. Rep., 267.

Following the intimation of the master and the suggestion of the Circuit Judge that Mrs. McCraney should have relief, if it is possible under the law to give it to her, we have examined carefully into the evidence of the case and the law we think applicable to the disclosed facts.

We think that the master and the Circuit Judge, both of whom evidently gave the case careful consideration, have overlooked the leading case in this State on the subject of merger, that of *McCreary v. Coggeshall,* 74 S. C., 42, 53 S. E., 978, 982, 7 L. R. A. (N. S.), 433, 7 Ann. Cas., 693. The opinion of the distinguished jurist, Mr. Justice Woods, in that case was said by this Court in the later case of *Owings v. Graham,* 120 S. C., 408, 113 S. E., 279, to have been a "masterful opinion." After reviewing many, if not all, of the former decisions of this Court on the law of merger, including the *Richardson* and *Bleckeley cases,* cited in the report and decree in the lower Court, Mr. Justice Woods, for this Court, said: "From this review we think it clear the later cases in this State establish the proposition, which as we have seen is in accord with the doctrine universally recognized in other jurisdictions, that in equity at least merger

will not take place if opposed to the intention of the parties, affirmatively proved, or to be implied from the fact that merger would be opposed to the interest of the person in whom the different estates or interests became united."

That the principles declared by Mr. Justice Woods are generally recognized as being just and equitable is shown by the interesting article on "Merger and Subrogation" in that excellent work, Jones on Mortgages (8th Ed.), Vol. 2, beginning at page 508. Speaking on the subject of the effect of the acceptance by a mortgagee of a conveyance of the equity of redemption, the learned author, Mr. Jones, at page 521, says: "The expressed intention will control; but in the absence of such express intention on the part of the mortgagee his intention will be presumed in accordance with his interests." Further (page 523), it is said: "When there is no evidence of the intention of the owner in uniting the legal and equitable estates in himself, it is proper to presume that he intended that effect which is the most beneficial to himself. Therefore, if the estate be subject to other incumbrances, which he is under no obligation to pay, and it is better for him to preserve the lien of the prior mortgage rather than to extinguish it, and let the next subsequent incumbrance into its place of priority, these facts may be taken as sufficient ground for inferring that his intention was to preserve the mortgage rather than to extinguish it."

Considering the facts of the cause and applying to them the principles announced in the *McCreary case,* it is entirely manifest that the merger of the mortgage into the fee-simple title was absolutely "opposed to the interest of the person [Mrs. McCraney] in whom the different estates or interests became united." It can hardly be conceived that it was to the interest of Mrs. McCraney to absolutely surrender her mortgage debt in exchange for the mortgaged property of about the value of the debt, when thereafter she would be compelled to protect the property by the payment of the mortgage debt of Henry Morris, amounting to something like

$400.00, and the judgment of Brown & Bush for a little more than $1,000.00. The transaction, in effect, amounted to Mrs. McCraney surrendering her secured debt of nearly $500.00, without any consideration therefor, and purchasing the real estate of Mrs. Morris, valued at about $500.00, at the price of about $1,400.00. It would be almost absurd for this Court, therefore, to reach the conclusion that a merger took place upon any legal assumption that it was to the interest of Mrs. McCraney for the same to occur. Neither the Circuit Judge nor the master held that the alleged merger should be sustained upon that theory.

The final conclusion of the master, approved by the Circuit Judge, was founded, therefore, it seems, upon the theory that the evidence failed to affirmatively establish the fact that it was not the intention of the parties that a merger should operate.

It is to be conceded that there was some evidence to support the holding mentioned, which was a question of fact. Mrs. Morris and her husband may have fully intended that a merger should operate. Perhaps it was to their interest for it to occur. Mrs. McCraney may have done things and failed to do things, and may have said things, tending to show that it was also her intention that a merger should take place, in so far as her mortgage and the deed she accepted were concerned. The "parties" who could by their acts and intentions bring about a merger were Mrs. McCraney, the mortgagee, and Mrs. Morris, the mortgagor. The junior mortgagee, Henry Morris, and Brown & Bush, the judgment creditors, had no right, power or authority to create a merger as to the mortgage held by Mrs. McCraney, and the title to the real estate held by Mrs. Morris. In consideration of the question of merger, therefore, the intentions of either Henry Morris or Brown & Bush are to be eliminated. For the latter it may be said that at no time did they have any part in the transactions under consideration. Henry Morris

may have desired the merger. If it operated, the result was to his financial benefit.

As indicated, there was some evidence that Mrs. Mc-Craney may have intended for what is known in law as a "merger" to take place. Her action in accepting the deed and in satisfying her mortgage give some strength to the theory that it was her intention so to do. But conceding all of this, it must be clear that her acts and intention were due to her ignorance of the facts that the Henry Morris mortgage and the Brown & Bush judgment were in existence, and were liens on the real estate being conveyed to her.

As suggested by both the Circuit Judge and master, Mrs. McCraney could have ascertained proper information by examining, or having examined, the public records. If the rights of some subsequent party were in any wise affected by this negligence on the part of Mrs. McCraney, we would, of course, hold her liable because of that negligence. But no subsequent innocent party is affected. With the setting aside of the transaction which has taken place, as to the conveyance of the property and the satisfaction of Mrs. McCraney's mortgage, neither Henry Morris nor Brown & Bush stand in any worse position than they were in prior to the occurrences. Nothing Mrs. McCraney has done put them to any disadvantage or caused them any loss.

The failure of Mrs. Morris, her husband, and Henry Morris to inform Mrs. McCraney of the existence of the junior mortgage and the judgment, when they had full opportunity to do so, caused her to execute the satisfaction of her mortgage. She was supposed to receive a clear title from Mrs. Morris to the premises. Mrs. Morris could not, under the circumstances, give her such title. Mrs. McCraney was dealing fairly and frankly with all these parties, and give Mrs. Morris a little cash for the execution of the deed in order to save the expense of a foreclosure suit. The evidence fails to show that at any time did she seek to take any undue advantage of any one. She was

simply endeavoring to protect her rights. She had the right to presume, as she testified, that she was dealing with "honest people." The law of this State (Section 1276 of the Code) makes it a misdemeanor, punishable by fine or imprisonment, for any person to "willfully and knowingly sell and convey any real or personal property on which any lien exists, without first giving notice of such lien to the purchaser or purchasers of such real or personal property." Mrs. McCraney might properly have assumed that Mrs. Morris, her grantor, would not violate this provision of the criminal laws, and that the husband of Mrs. Morris would not aid and abet her in the violation.

"Where a conveyance of mortgaged premises is made to the mortgagee in satisfaction of the mortgage debt, he taking the same in ignorance of a subsequent judgment lien thereon and canceling the mortgage of record, equity will not treat the conveyance as a merger of the mortgage lien in the absolute estate but will revive such lien as against a purchaser on execution sale." Jones on Mortgages (8th Ed.), Vol. 2, p. 550.

Whatever the intention of Mrs. McCraney may have been, whether or not to effect a merger in the law, that intention was produced, and the act performed, because of her ignorance and mistake, a mistake which injured no innocent party.

· Referring to the effect of the satisfaction of a mortgage of real estate made through mistake, this Court has said: "It [the satisfaction] being entered through mistake, the law regards it as never having been entered at all, unless entering the satisfaction brought about prejudice to others dealing with the property." *Young v. Pitts,* 155 S. C., 414, 152 S. E., 640, 642.

That principle is generally recognized, as will be seen from the following quotation: "Generally, where the release or satisfaction of a mortgage is the result of fraud, accident, or mistake, it will not inure to the benefit of a person ac-

quiring an interest in the property, who did not rely or advance anything on the faith of such discharge." 41 C. J., 590.

. The junior mortgagee, Henry Morris, advanced no money and has not lost anything because of the mistake of Mrs. McCraney in satisfying her mortgage. The position of Brown & Bush is similar. Mrs. McCraney, in good faith, accepted the deed, thinking she would get a clear title to the property, free of outstanding liens. She has shown her good faith by paying past-due taxes for several years. Her acts have brought damage to no person except herself, and the Court may restore her to her former position without injury or damage to any other person.

In the consideration of this case, this is a Court of equity. "Equity delights to do justice and that not by halves."

The judgment of this Court is that the decree of the Circuit Judge be, and the same is, hereby reversed, and that the cause be remanded to the Court of Common Pleas of Bamberg County for the purpose of carrying into effect the views herein expressed.

MESSRS. JUSTICES STABLER, CARTER, and BONHAM concur.