BRANCH BRANKING & TRUST COMPANY v. HOME FEDERAL SAVINGS & LOAN ASSOCIATION OF EASTERN NORTH CAROLINA AND RALPH L. TYSON, SHERIFF OF PITT COUNTY

No. 863SC202

(Filed 7 April 1987)

1. **Estates § 2.1; Mortgages and Deeds of Trust § 17.1— deed of trust as first lien — conveyance of land from mortgagor to lienholder — doctrine of merger inapplicable**

     The mortgage estate on land held in trust by plaintiff first lienholder did not merge with the fee simple estate obtained by plaintiff lienholder when it accepted and recorded a deed from the mortgagor conveying the encumbered land, and a junior judgment lienholder thus did not obtain clear title to the land by purchasing it at a sheriff's sale but obtained title subject to plaintiff's deed of trust, where merger would be inimical to the interests of the plaintiff; plaintiff did not represent to the mortgagor that it would accept the deed in satisfaction of the indebtedness or that it would cancel the mortgagor's note and deed of trust; it was not plaintiff's intention to subordinate its interests to the interests of any subsequent lienholder; plaintiff did not cancel and did not intend to cancel the note and deed of trust; and the deed was inadvertently recorded by plaintiff's attorney with no actual knowledge of the judgment lien of the junior lienholder.

2. **Rules of Civil Procedure § 59— denial of amended findings or judgment**

     The trial court did not err in denying defendant's motion for amended findings of fact or an amended or new judgment under N.C.G.S. § 1A-1, Rules 52(b), 59(e) and 59(a)(7), where the trial court's decision was supported by the evidence and was not contrary to law.

APPEAL by defendant Home Federal Savings & Loan Association of Eastern North Carolina from *Bowen, Judge.* Judgment entered out of session on 4 January 1985 in Superior Court, PITT County. Heard in the Court of Appeals 20 August 1986.

*Allen, Hooten & Hodges by John M. Martin for plaintiff appellee.*

*Everett, Everett, Warren & Harper by C. W. Everett, Sr., Edward J. Harper, II, and Ryal W. Tayloe for defendant appellant.*

COZORT, Judge.

[1]   In this appeal we consider whether the mortgage estate on land held in trust by a first lienholder merged with the fee simple estate obtained by the lienholder when it accepted and recorded a deed from the mortgagor conveying the encumbered land to the lienholder, thus allowing a junior lienholder to obtain clear title to the land by purchasing it at a sheriff's sale. We hold the doctrine of merger does not apply in this case and that the junior lienholder's title is subject to the first lienholder's deed of trust. Relevant facts and procedure follow:

On 24 November 1980, George Ronald Taylor signed a note wherein he promised to repay to Branch Banking and Trust Company, plaintiff herein, a loan of $166,000 by making eighty-four (84) monthly installments of $3,440.48 beginning 24 December 1980 and continuing on the same date of each month thereafter until paid in full. The BB&T note renewed a $200,000 loan from BB&T to Taylor on 30 January 1980. Repayment of the loan was guaranteed by four individuals and one corporation. The BB&T note of 24 November 1980 was secured by a deed of trust executed by Taylor on 30 January 1980, which gave as collateral a 38.973-acre tract of land in Pitt County, hereinafter "the land," and a 9,000-square-foot building located thereon. The deed of trust was duly recorded on 30 January 1980 in the Pitt County Public Registry. In the spring of 1982, Taylor was charged with criminal offenses and began encountering difficulties in meeting his financial obligations. By late September of 1982, the loan payments were past due more than $9,600, with an outstanding loan balance of over $150,000. Taylor listed the land for sale through an auction company, hoping to sell the land for an amount sufficient to pay off the debt to BB&T. Taylor entered a guilty plea to the criminal charges pending against him, and in October of 1982, he was sentenced to a term of imprisonment. On 22 October 1982, Taylor executed a deed of trust pledging the land as security for

a $300,000 judgment owed to Harrington Manufacturing Company. This second deed of trust was promptly recorded in the Pitt County Public Registry.

In October of 1982, Vernon H. Rochelle, a Kinston attorney whose law firm was on retainer to provide day-to-day advice for plaintiff bank, was approached by Kenneth Ball, one of the individual guarantors on the BB&T note, about serving as attorney-in-fact for Taylor to assist in the sale of the land. Rochelle agreed and on 1 November 1982, Taylor executed a Limited Power of Attorney appointing Rochelle as his Attorney-in-Fact to do "all acts necessary" to sell the land and to apply the proceeds to his indebtedness to plaintiff BB&T. On 12 January 1983, Taylor and Rochelle executed a deed, which transferred 3.521 acres of the land and the 9,000-square-foot building to L. V. Myles, Incorporated. Harrington Manufacturing Company also executed the deed in order to release its judgment and deed of trust on the land conveyed to Myles. The proceeds of the sale to Myles was applied to Taylor's indebtedness to BB&T, reducing Taylor's debt to BB&T to approximately $75,000. Rochelle prepared the deed conveying the 3.521 acres and building from Taylor to Myles, after doing a "cursory" title search for other outstanding debts. Rochelle's title search revealed no other liens on the land except those of BB&T and Harrington Manufacturing.

During February of 1983, BB&T officials continued discussions with the auction company about selling the remaining 35.416 acres of the land. Rochelle recommended to BB&T officials that the land be foreclosed; however, BB&T preferred to try to sell the land. An auction sale was held on 19 March 1983, and the high bid was $55,000. The bid was rejected by BB&T and the guarantors on the BB&T note. Rochelle told BB&T officials he thought the bid should have been accepted. Over the next few months, Rochelle negotiated the sale of the land's tobacco allotment for $15,000 and the leasing of the land for the 1983 crop year, further reducing Taylor's indebtedness to BB&T. During this period of time, Rochelle and BB&T officials learned that the guarantors of the BB&T note had also become insolvent, with most having filed for bankruptcy. BB&T officials began to consider what other options were available to bring in enough money to satisfy the debt. Ultimately, BB&T decided to have the land deeded from Taylor to BB&T, hoping to sell the land when land prices became higher.

Rochelle drafted a deed transferring the remaining 35.416 acres to BB&T. Taylor signed the deed on 26 May 1983. Harrington Manufacturing Company executed the deed in June of 1983 to release the land from the lien of its deed of trust. The deed was returned to Rochelle's office in late June of 1983. Rochelle intended to take the deed to Pitt County, bring the title up to date and then record the deed. He left the deed with a secretary and asked her to prepare a check to pay the recording fees. The next time he saw the deed, it had already been recorded, with the data showing a recording date of 30 June 1983.

Rochelle then went to Pitt County to update the title, which he had intended to do before recording the deed. His title update revealed that on 22 April 1983, a judgment against Taylor of about $350,000, plus $50,000 in attorney's fees, had been recorded in Pitt County. The judgment had been obtained by Home Federal Savings and Loan Association of Eastern North Carolina, the defendant herein. Upon discovering the Home Federal judgment, Rochelle returned to Kinston, and after researching the effect of the transactions, he transmitted the deed to BB&T and informed BB&T officials of the judgment and the potential problem. At this time, BB&T had not cancelled either the promissory note or the deed of trust. Rochelle again recommended that BB&T begin foreclosure proceedings. He instituted a foreclosure proceeding in late September. The foreclosure proceeding is still pending.

Upon a request by Home Federal, on 12 October 1983 the Clerk of Superior Court for Pitt County entered an Order ordering the Sheriff of Pitt County to institute procedures for the sale of the land in order to satisfy the Home Federal judgment of 22 April 1983. The Pitt County Clerk of Superior Court issued an Execution on 17 October 1983 demanding the Sheriff satisfy the judgment. On 19 October 1983 the Sheriff of Pitt County issued his Notice that the land would be offered for sale to the highest bidder on 18 November 1983. On 18 November, BB&T instituted this action by the filing of a complaint asking the Superior Court of Pitt County to issue a temporary restraining order enjoining the Sheriff's execution sale of the land until the court could determine the rights of plaintiff BB&T and defendant Home Federal and enter a judgment declaring the rights of plaintiff and defendant. No temporary restraining order was entered, and the Sheriff's sale was held on 18 November, with defendant Home

Federal making the last and highest bid of $5,000. On 21 November, Superior Court Judge David E. Reid, Jr., denied plaintiff's request for a temporary restraining order. On 29 November, the Pitt County Clerk of Superior Court entered an Order approving and confirming the Sheriff's sale of the land to defendant Home Federal, and the Sheriff's Deed conveying the land to defendant Home Federal was executed on 16 December. On 21 December 1983, the defendant filed its answer to plaintiff's complaint.

The matter was heard before Superior Court Judge Wiley F. Bowen at the 15 November 1984 Non-jury Civil Session of the Superior Court of Pitt County. On 15 January 1985, Judge Bowen filed an Order holding that "the lien created by [plaintiff's] Deed of Trust and in favor of the plaintiff remained at all times superior to the judgment lien of the defendant . . . [and] [t]hat the defendant holds title to the land subject to the lien created by the aforementioned Deed of Trust." On 21 January 1985, the defendant filed a motion requesting, pursuant to G.S. 1A-1, Rule 52(b) of the Rules of Civil Procedure, that the trial court amend its findings of fact and make additional findings of fact and further requesting, pursuant to Rule 59(e) and Rule 59(a)(7) of the Rules of Civil Procedure, that the court order a new trial, alter or amend the judgment or enter a new judgment cancelling the plaintiff's deed of trust and holding for defendant. Judge Bowen denied defendant's motion on 1 November 1985, and defendant appealed to this Court.

The dispositive question for this appeal is whether the mortgage estate held by plaintiff BB&T merged with the fee estate BB&T obtained when Taylor conveyed the land to BB&T, thus leaving defendant Home Federal with legal title free and clear of all liens pursuant to its purchase of the land at the Sheriff's sale. For reasons which follow, we hold that the doctrine of merger does not apply, and we affirm the trial court's ruling that defendant Home Federal holds title subject to the lien created by plaintiff BB&T's deed of trust.

The doctrine of merger of estates was explained in great detail by our Supreme Court in 1924:

> It is undoubtedly the general rule of law that where one who holds a mortgage on real estate becomes the owner of the fee, and the two estates are thus united in the same per-

son, ordinarily the former estate merges in the latter. *Hutchins v. Carleton*, 19 N.H., 487. The equitable or lesser estate is said to be swallowed up, or "drowned out," by the legal or greater interest. But this rule does not apply where such merger would be inimical to the interests of the owner, as, for example, where it would prevent his setting up the mortgage to defeat an intermediate title—such as a subsequent lien or a second mortgage, as in the instant case—unless the parties intended otherwise; and this intention will not be presumed contrary to the apparent interests of the owner. *Hines v. Ward*, 121 Cal., 115; Jones on Mortgages, sec. 870; 19 R.C.L., 484; Note: 39 L.R.A. (N.S.), 834, *et seq.* As to whether such was intended by the parties is a question of fact; and the courts will "permit or prevent the application of the doctrine as the same may accord with the intent of the parties and the right and justice of the matter." *Odom v. Morgan*, 177 N.C., p. 369.

The following statement of the law, taken from 27 Cyc., 1379, we apprehend, is applicable, in substance at least, to the facts of the present case:

"The technical doctrine of merger will not be applied contrary to the agreement or the express or implied intention of the parties; and, therefore, in equity, there will be no merger of estates when a mortgagee receives a conveyance of the equity of redemption, when such a result would be contrary to his real intention in the transaction, or to the bargain made by the parties at the time. This is the case where the mortgagee means to keep the security alive for his own protection as against other liens or encumbrances, and also where the conveyance is not intended by the parties to be in satisfaction of the mortgage debt, but only as additional security for it. The question whether or not the parties intended that a merger of estates should take place is a question of fact. It is not settled by the mere recording of the deed. But the intention that there should be no merger may be shown by a stipulation in the deed or other express declaration of the parties, or the fact that the mortgage does not cancel or surrender the evidences of the debt or release the mortgage, but on the contrary, retains them, or that he assigns the mortgage to a bona fide purchaser, representing it

as a good and valid security. On the other hand, if he assumes to deal with the estate as absolute owner, and conveys it to another, it proves a merger. In the absence of any such proof, the question must be determined by a preponderance of the evidence presented."

*Washington Furniture Company v. Potter*, 188 N.C. 145, 146-47, 124 S.E. 122, 123 (1924).

The defendant contends that the evidence from plaintiff's business records shows a clear intention to accept a deed in lieu of foreclosure which is sufficient to overcome the presumption against merger. Defendant contends the evidence shows plaintiff's officers had the intent to exercise control over the property even prior to the acquisition of legal title. Defendant further contends that when plaintiff received the deed from Taylor in July of 1983, plaintiff's officers had no intention of foreclosing. In support of these arguments, defendant refers to, among other things, several documents in evidence at the trial which were made in the course of business by Joe O. Creech, a BB&T Vice President in charge of the business loan department for plaintiff's Kinston office. One such document, for example, is Creech's Report of Non-Performing Loan prepared on 18 July 1983, wherein Creech states: "Reason for Non Performing Status[:] George Ronald Taylor is in prison for 20 years. Guarantors have filed bankruptcy except Kenneth Edward Ball. Prospects for Collection[:] Ron Taylor has deeded the land to the bank in lieu of foreclosure." Defendant also refers to Creech's testimony at trial, particularly this exchange with defendant's counsel:

Q. Mr. Creech, at the time you took this deed, did you take it with the intention to instate a foreclosure proceeding on this property?

A. When the deed was received it was not received with any intentions of foreclosure, however that certainly was a possibility at any time, since we did not release and had no intentions of releasing, and typically do not release notes and deeds of trust on any type property, foreclosed or otherwise, until such time as its [*sic*] finally sold and we have received proceeds, therefrom.

Q. Mr. Creech, I ask you again, did you receive the deed from George Ronald Taylor by and through his attorney-in-

fact, that has been designated as Defendant's Exhibit 45, with the intention of instating a foreclosure proceeding on the property described in that deed, yes or not [*sic*]?

A. No, not at that particular time.

We believe this evidence shows that plaintiff accepted the deed in lieu of foreclosure *at that time;* we do not believe it compels a finding that plaintiff intended to merge its estate and thus give up all rights to foreclosure at *any* time, subrogating its rights to those of defendant. We note, initially, that at the time Creech wrote the memo upon which defendant relies (18 July 1983), he was unaware that defendant had a judgment lien against Taylor. As Creech testified:

We did not give up the option, nor the right to foreclose on our existing deed of trust to pay. We did not mark it paid, we did not take it instead or in lieu of, or in place of, until such time as we were assured by certification that we in fact had good title.

\* \* \* \*

I don't recall the exact date when I first discovered that there was a problem on this loan with regard to the Home Savings judgment lien, but it seems to me it was in the latter part of August, or so, whenever Mr. Rochelle called or communicated that we might have a problem. . . .

\* \* \* \*

The bank's understanding was that we would take the deed only if the deed was free and clear of all encumbrances and it did not prevent us from passing clear deed to a prospective purchaser of the property. We had no agreement with Ron Taylor concerning cancelling his debt or taking the land in complete satisfaction of the note and deed of trust.

Creech also testified, in response to question from counsel:

Q. Had you been made aware of the intervening judgement [sic] by Mr. Rochelle or anybody else before the deed was recorded, what would have been the bank's position?

A. We would have foreclosed . . . .

Of equal significance is testimony from Rochelle that the deed from Taylor was inadvertently recorded before he updated the title:

> My recollection is that the deed was returned to our office sometime at the end of June . . . . There was no rush to record this deed, and I took it to my secretary that handles real estate transactions, put it on her desk, and said I needed a check to record it. I probably said I'll be taking it to Greenville or something like that. . . . The next time I saw the deed there was recording data on it. I had given no instructions to my support staff secretary concerning getting the deed recorded. I had just said get me a check, this has got to go to Greenville, or I am going to take them to Greenville, or something like that. I absolutely did not intend to have this deed recorded before I updated the title. After I learned that the deed had recording data on it and had in fact been recorded I came to Greenville to do what I would have done prior to the time that it was recorded if I had brought it to bring the title up to date.

> \*    \*    \*    \*

> I had no knowledge, at any time before I did my title update in July, 1983, of the Home Federal judgment in Pitt County. I would not have recorded the deed had I updated the title but would have instead have come back and gotten a separate release from Home Federal as I did from Harrington Manufacturing.

Applying the rules set forth in *Washington Furniture Company v. Potter, supra,* to the evidence as found in the testimony of Creech and Rochelle leads to the conclusion that the doctrine of merger does not apply. As was stated in *Washington,* the "rule does not apply where such merger would be inimical to the interests of the owner, as, for example, where it would prevent his setting up the mortgage to defeat an intermediate title—such as a subsequent lien or a second mortgage . . .—unless the parties intended otherwise; and this intent will not be presumed contrary to the apparent interests of the owner." *Id.* at 146, 124 S.E. 2d at 123. It is clear that merger would be inimical to the interests of BB&T and would prevent its defeating the subsequent lien of defendant.

We find the instant case similar to the facts of a case decided by the Supreme Court of South Carolina in 1933. In *McCraney v. Morris*, 170 S.C. 250, 170 S.E. 276 (1933), that court considered this factual situation: Mrs. Mary M. McCraney loaned $400 to Mrs. Edna M. Morris on 8 April 1927, with the debt evidenced by an installment bond secured by a mortgage of real estate. The mortgage was recorded on 22 April 1927. On 10 October 1928, Mrs. Edna M. Morris mortgaged the same real estate to her brother-in-law, Henry Morris, to secure a debt of $340; this mortgage was recorded on 26 February 1929. In the fall of 1931 Mrs. McCraney pressed for payment of the debt; however, Mrs. Morris would not pay. Mrs. McCraney agreed to accept conveyance of the mortgaged premises from Mrs. Morris in exchange for payment of $12 by Mrs. McCraney to Mrs. Morris and settlement of the mortgage debt. Mrs. Morris conveyed the property to Mrs. McCraney on 3 December 1931; and a few days later, Mrs. McCraney marked the mortgage satisfied and delivered it to Mrs. Morris, who had the satisfaction of debt recorded. At the time of the acceptance of the deed, Mrs. McCraney had no actual knowledge of the Henry Morris mortgage. She did not examine the records for liens on the property prior to accepting the deed because Mrs. Morris's husband had written her and told her that she would get clear title to the property, and Mrs. McCraney testified she "always took them to be honest."

Upon learning of the Henry Morris mortgage after she had accepted the deed, Mrs. McCraney tried to repudiate the conveyance and the satisfaction of the mortgage, returned the deed to Mrs. Morris, and filed suit against Mrs. Morris. The lower court held there was a merger of the estates, and denied Mrs. McCraney's request that the Morris mortgage be declared junior and subordinate to her mortgage. The Supreme Court reversed, stating:

> [I]t is entirely manifest that the merger of the mortgage into the fee-simple title was absolutely "opposed to the interest of the person [Mrs. McCraney] in whom the different estates or interests became united." . . .
>
> *     *     *     *
>
> . . . there was some evidence that Mrs. McCraney may have intended for what is known in law as a "merger" to take

place. Her action in accepting the deed and in satisfying her mortgage give some strength to the theory that it was her intention so to do. But conceding all of this, it must be clear that her acts and intention were due to her ignorance . . . that the Henry Morris mortgage . . . [was a] lien on the real estate being conveyed to her.

. . . If the rights of some subsequent party were in any wise affected by this negligence on the part of Mrs. McCraney, we would, of course, hold her liable because of that negligence. But no subsequent innocent party is affected. . . .

. . . The evidence fails to show that at any time did she seek to take any undue advantage of any one. She was simply endeavoring to protect her rights. . . .

\*     \*     \*     \*

. . . Mrs. McCraney, in good faith, accepted the deed, thinking she would get a clear title to the property, free of outstanding liens. . . . Her acts have brought damage to no person except herself, and the court may restore her to her former position without injury or damage to any other person.

*Id.* at 260-62, 170 S.E. at 279-80.

The reasoning of the South Carolina court is applicable to the facts at hand. BB&T accepted the Taylor deed in ignorance of the Home Federal judgment lien against Taylor. BB&T took the land endeavoring to protect its rights. At the time Taylor conveyed to BB&T, Home Federal held a junior lien on the land. The action of the trial court in subordinating Home Federal's judgment lien to BB&T's mortgage lien returned the parties to their priority at the time Taylor executed the deed. The trial court's decision was correct, and it is hereby affirmed.

The defendant brings forward three other assignments of error for our consideration. The defendant contends that the trial court erred in two significant findings of fact, alleging there is no competent evidence to support them. The challenged findings are:

18. That after the Deed was executed by all parties, it was delivered to the law offices of Rochelle. That it was Rochelle's intention that he would personally take the Deed

to Greenville, Pitt County, North Carolina, for the purposes of updating and certifying the title prior to recordation. That, as a result of a mistake occurring in the law offices of Rochelle, the Deed was inadvertently sent to the Register of Deeds of Pitt County, North Carolina, and recorded on June 30, 1983 in Book Y-51, page 387. That this recordation was done without the knowledge of Rochelle and was not instructed to be done by Rochelle. That as of the time of recordation, neither Rochelle nor the plaintiff had any actual knowledge of the judgment lien of the defendant.

19. That, upon learning of the inadvertent recordation of the Deed, Rochelle updated title in Pitt County and discovered the subsequent judgment lien of the defendant. That had he known or discovered this lien prior to recordation, Rochelle would not have recorded the Deed. That, approximately twenty (20) days after he became aware of the defendant's line, [*sic*] Rochelle notified the plaintiff of the mistake and of the intervening judgment lien of the defendant. That after learning of the mistake in recordation and the intervening judgment lien of the defendant, the plaintiff informed Taylor that it would proceed with a foreclosure proceeding.

We disagree with defendant's contention that there is no evidence to support these findings. The testimony of Rochelle and Creech, quoted above, amply supports the trial court's findings. This assignment of error is overruled.

[2] The last two assignments of error concern the defendant's argument that the trial court erred in denying defendant's motion of 21 January 1985 wherein defendant requested amended findings of fact, an amended or new judgment, or a new trial pursuant to Rule 52(b), Rule 59(e), and Rule 59(a)(7) of the North Carolina Rules of Civil Procedure. Rule 52(b) provides: "(b) *Amendment.*—Upon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly. The motion may be made with a motion for a new trial pursuant to Rule 59." The primary purpose of a Rule 52(b) motion is to enable the appellate court to obtain a correct understanding of the factual issues determined by the trial court. If a trial court has omitted certain essential findings of fact, a motion under Rule

52(b) can correct this oversight and avoid remand by the appellate court for further findings. *Parrish v. Cole*, 38 N.C. App. 691, 694, 248 S.E. 2d 878, 879 (1978). In its judgment filed 15 January 1985, the trial court made findings of fact, among others, that plaintiff did not represent to Taylor that it would accept the deed in satisfaction of the indebtedness or that it would cancel the Note and Deed of Trust, that it was not plaintiff's intention to subordinate its interest to the interest of any subsequent lienholder, that plaintiff did not cancel and did not intend to cancel the Note and Deed of Trust, and that the deed was inadvertently recorded by Rochelle with no actual knowledge of the judgment lien of the defendant. These findings are sufficient to support the trial court's judgment that the merger doctrine does not apply; therefore, the trial court properly denied defendant's Rule 52(b) motion.

We likewise reject defendant's argument that the trial court erred in denying defendant's motion for a new trial under Rule 59(a)(7) and its motion to alter or amend the judgment under Rule 59(e). Rule 59(a)(7) provides that a new trial may be granted on the basis of "[i]nsufficiency of the evidence to justify the verdict or that the verdict is contrary to law." Under Rule 59(a), we also find:

> On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

Rule 59(e) provides that "[a] motion to alter or amend the judgment under section (a) of this rule shall be served not later than 10 days after entry of the judgment." Defendant argues in his brief that the trial court should have granted its motion because "the evidence was insufficient to justify the judgment and that the Court [should] amend its findings of fact and conclusions of law, make new findings of fact and conclusions of law, and direct the entry of a new judgment in [defendant's] favor . . . ." We have held above that the trial court's decision was supported by the evidence and was not contrary to law. Accordingly, we find no merit to this argument of defendant. This Court and our Supreme Court have consistently held that a trial court's order under Rule

59 is not to be disturbed absent an affirmative showing of manifest abuse of discretion by the judge or a substantial miscarriage of justice. *See, e.g., Worthington v. Bynum,* 305 N.C. 478, 290 S.E. 2d 599 (1982); and *Pearce v. Fletcher,* 74 N.C. App. 543, 328 S.E. 2d 889 (1985). We have reviewed the record here in its entirety and find neither.

The judgment below is

Affirmed.

Judges BECTON and JOHNSON concur.